327 A.2d 10

COMMONWEALTH of Pennsylvania

v.

Marshall JONES, Appellant.

Supreme Court of Pennsylvania.

Argued May 3, 1972.

Decided Oct. 16, 1974.

Samuel Kagle, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Div., Albert L. Becker, Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION

POMEROY, Justice.

This is a direct appeal from the judgment of sentence of life imprisonment imposed upon the appellant following his conviction of first degree murder.[1]

---

1. Appellant was also convicted at the same trial of related offenses, *viz.*, aggravated robbery, assault and battery, aggravated as-

64

The evidence can be summarized briefly: In the early morning hours of December 14, 1969, Marshall Jones and three other persons agreed to "make some hits" in downtown Philadelphia. They proceeded to the subway station at 30th and Market Streets, where they jumped one Steven Kreloff, beat him badly and robbed him of money and other valuables. Almost immediately thereafter they attacked, beat and robbed one Harry Pollack, and then threw him onto the subway tracks. Pollack subsequently died of the beating and fall. The appellant and his accomplices then scattered, only to regroup about an hour later. At that time, Jones snatched a purse from one Annie Thomas, a pedestrian. Appellant and two of his companions were arrested approximately 10–20 minutes after the purse snatching.[2]

Early the following morning, appellant signed a nine-page written statement in which he admitted participating in the beatings and robberies and specifically admitted pushing Pollack onto the subway tracks. Appellant's later motion to suppress the confession was denied

sault and battery, and conspiracy to commit robbery and assault and battery. On these charges, appellant received varying prison sentences, to run concurrently with each other and with the sentence of murder. From these seven judgments of sentence, appellant has taken but a single appeal, which was lodged in this Court. Since appellant was convicted of murder in the first degree, he has a right of direct appeal from that judgment to this Court under the Act of July 31, 1970, P.L. 673, No. 223, art. 2, § 202, 17 P.S. § 211.202. Appeals from the convictions of the other offenses should have been taken to the Superior Court. The Commonwealth has filed no motion to quash, however, nor has it interposed any objection to the procedure followed. This failure to object serves to perfect this Court's jurisdiction of the appeal unless the Court orders otherwise (Act of July 31, 1970, P.L. 673, No. 223, art. 5, § 503, 17 P.S. § 211.503). Since the issues raised are common to all the judgments, we have concluded that no purpose would be served by quashing the appeal, which we here treat as consolidated appeals from the several judgments. By this action, however, we do not condone the failure of counsel to take a separate appeal from each judgment of sentence.

2. The conviction of one of the appellant's companions was affirmed by this Court in Commonwealth v. Banks, 454 Pa. 401, 311 A.2d 576 (1973).

following a hearing, and the document was introduced into evidence at trial. At trial, appellant renewed his attack on the confession by offering the testimony of a psychiatrist concerning his, Jones', subnormal mental capacity and lack of verbal facility, and his consequent inability to have given the confession which the Commonwealth attributed to him. The trial court refused to allow this evidence; we have concluded that this exclusion was error and requires a new trial.[3]

At a side-bar discussion, counsel indicated that the purpose of the offer of proof was an attempt to "minimize the impact of the defendant's confession". The gist of the psychiatrist's testimony, he said, would be that, in light of the defendant's mental capacity, his I.Q. and lack of verbal facility, defendant would have been incapable of giving a statement of the length and continuity of the one allegedly given by the defendant to the police. Counsel indicated that the psychiatrist would testify that in his opinion the interrogating detective had interjected questions which were not reflected in the statement. He further stated that the purpose of the psychiatrist's testimony would be to show that the defendant had an I.Q. of 71 and was a mild mental defective and that "these points would be important to the jury's evaluation of the defendant's statement".[4] The trial judge's stated reason for refusing the offer was that the psychiatrist was not

---

**3.** In light of our disposition of this case, we need not consider the other alleged errors raised by the appellant: (1) that the confession was the product of an unnecessary delay in arraigning the appellant; (2) that the trial court erred in consolidating several separate offenses; (3) that the appellant was denied the effective assistance of counsel; and (4) that the trial court erred in sending out to the jury during its deliberations the typewritten confession containing reference to other crimes with which the appellant was not charged.

**4.** In his brief in this Court, appellant now contends that the offer of proof was to show that the appellant did not have sufficient capacity to understand his constitutional rights and intelligently waive those rights. We have, however, limited our consideration to the reasons for the offer as presented to the trial judge.

present when the statement was given by the appellant to the police; hence, presumably, was not in a position to contradict or impugn the police account relative to the giving of the statement. The court en banc, in rejecting appellant's post-trial motions, concluded that the testimony was properly excluded since the "subject matter of the proffered testimony is outside the area of competence, even for an expert, on which to express his opinion".

In the past, a majority of this Court has looked with some disfavor upon the admission of psychiatric testimony in criminal cases on issues other than the sanity of a defendant under the M'Naghten Rule. *See Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A.2d 687 (1971); *Commonwealth v. Weinstein*, 442 Pa. 70, 274 A.2d 182 (1971) (particularly the opinion of Mr. Chief Justice Bell); *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A. 2d 644 (1969); *Commonwealth v. Phelan*, 427 Pa. 265, 234 A.2d 540 (1967); *Commonwealth v. Ahearn*, 421 Pa. 311, 218 A.2d 561 (1966). In *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972), taking note of the advances that had been made in the field of psychiatry, we concluded that psychiatric testimony could be admitted to show that a defendant had acted in the heat of passion when he committed a homicide. While, on its facts, *McCusker* is not controlling in the case at bar, its rationale is applicable here: "Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value. A leading commentator has suggested the following desideratum for relevancy: '[D]oes the evidence offered rendered [sic] the desired inference *more probable than it would be without the evidence?* . . . Relevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value and is prima facie admissible.' McCormick, Evidence § 152 at 318–19 (1954) (emphasis in original); 1 Wigmore, Evidence, §§

9–10 at 289–95 (3rd ed. 1940).'' 448 Pa. at 388, 292 A. 2d at 289. Our analysis then proceeded in part as follows: "Applying the established principles of relevancy to a murder prosecution where a defendant asserts that he acted in the heat of passion, it seems clear any evidence—lay or psychiatric—pertinent to that defense should be admissible. The principal vice of rejecting psychiatric testimony, as the trial court did here, is that it excludes from the consideration of the factfinders evidence of probative value vital to a determination of defendant's state of mind.'' 448 Pa. at 391, 292 A.2d at 290.[5]

Applying to the case at hand the principles set forth in *McCusker,* we have concluded that psychiatric testimony concerning a defendant's mental capacity and condition at the time of giving an alleged confession is admissible on the issue of his ability to give the confession. The state of mind of a defendant at the time of giving a confession can plainly be brought into question at trial and the defendant should be able to introduce any evidence— lay or psychiatric—which is relevant to that issue.

While we have not had occasion heretofore to consider the admissibility of psychiatric evidence in a situation such as this, we have said that "[a]ge, *intelligence* and the condition of the suspect (or defendant) are among the factors to be considered in determining whether an inculpatory statement or a confession was voluntary and whether a suspect or defendant was properly advised of and understood the rights and protections granted her by the Constitution, and whether her decision not to avail herself of these protections was a knowing and intelligent waiver''. *Commonwealth v. Taper,* 434 Pa. 71, 78,

5. In *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974) [filed June 28, 1974], a case involving alleged insanity at the time of commission of a homicide, we emphasized that psychiatric testimony is not to be given "overwhelming weight'' (Opinion at 6), but this observation in no way affected the admissibility of such evidence in a proper case.

253 A.2d 90, 93 (1969) (emphasis added). This determination was in line with the United States Supreme Court's decision that limited mental ability is a factor which weighs heavily against the voluntariness of a confession. *Clewis v. Texas,* 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). While the appellant in this case is not strictly challenging the voluntariness of his confession, he is trying, by his offer of proof, to have the confession viewed in the perspective of his alleged subnormal mental capacity, and so to question the weight that should be given to it. In effect, he is saying that the statement in the format presented by the Commonwealth was not truly his own. We see no reason why opinion testimony by a qualified psychiatrist that, because of his low intelligence, appellant was incapable of giving such a statement should not be admissible for that purpose, notwithstanding that he was not present when the confession was made and recorded.[6]

The admissibility of evidence of subnormal mental capacity in situations such as this has been upheld in other jurisdictions. This has been done without finding it necessary to distinguish between psychiatric and other types of testimony. The Supreme Court of Washington in the case of *State v. Allen,* 67 Wash.2d 238, 406 P.2d 950, 952 (1965) laid down what we believe to be the proper rule: "[I]n the absence of an adjudication of insanity or incompetency, and in the absence of any action by the state or its officers which could be said to make a

---

6. Nothing contained in Pa.R.Crim.P. 323(j), 19 P.S.Appendix, demands a contrary result. That rule provides: "If the [suppression hearing] court determines that the evidence is admissible, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but *nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility.*" (Emphasis added.) The purpose of the proffered psychiatric testimony in this case was not to question the admissibility of the statement, but to raise a question concerning its probative value.

confession involuntary, a confession by a mentally ill defendant should be admissible with the defendant at liberty to introduce evidence of any circumstances that might affect its voluntariness or its probative value." Such evidence could as well come in through psychiatric testimony as any other kind. *See also People v. Isby*, 30 Cal.2d 879, 186 P.2d 405 (1947) (testimony of a *psychologist* that the defendant had an I.Q. of 58 and was "feebleminded" admitted on issue of admissibility of confession).

It may be granted that an obvious way in which to challenge any statement attributed to a party to a lawsuit is by the direct testimony of the person who allegedly gave it. The fact that a defendant does not choose to proceed in this fashion, however, does not preclude resort to other probative and competent evidence on the subject; the weight to be given such other evidence is for the factfinder.

In sum, since the integrity of the confession was an issue in this case and the appellant's mental capacity bore on that issue, and since the specialized knowledge of the psychiatrist sought to be called may well have been helpful to the jury in determining that mental capacity, the testimony should have been admitted.[7]

**7.** *See* Rule 702 of the proposed Rules of Evidence for United States Courts and Magistrates which sets forth the following standard for the allowance of testimony by experts:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
As the note of the Advisory Committee to this rule states:
"Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.' Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they

**70**

Judgment of sentence is reversed, and the case is remanded for a new trial.

ROBERTS, J., concurs in the result.

EAGEN and O'BRIEN, JJ., dissent.

NIX, J., did not participate in the consideration or decision of this case.

are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918."