479 A.2d 473

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Marvin A. GARCIA, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 26, 1984.

Decided July 13, 1984.

---

Lewis S. Small, Philadelphia (Court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

On May 31, 1978, Marvin Garcia bludgeoned Emilie Schmid to death with a meathook and, following the killing,

took money and other property from the victim's grocery store and home. A jury found Garcia guilty of felony murder and robbery. Following the denial of post-verdict motions, Common Pleas imposed a sentence of life imprisonment and a concurrent sentence of ten to twenty years for Garcia's second degree murder and robbery convictions, respectively. This is Garcia's direct appeal from these sentences. Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S. § 722(1), right abolished by Act of September 23, 1980, P.L. 686, No. 137. Appellant's arguments in support of his contention that a new trial is warranted are meritless. Accordingly, we affirm the judgment of sentence.

At trial, Garcia conceded that he killed Mrs. Schmid, who was seventy-two years old at the time of her death, and that he took her money and other valuables. However, throughout these proceedings, Garcia's counsel has maintained that Garcia, who was seventeen years old at the time of the incident in question, and who suffers from organic brain damage and mild retardation, is, due to his diminished capacity, incapable of forming an intent to kill or commit robbery. Garcia's defense at trial was that he was guilty only of third degree murder and theft.

Appellant first contends that the trial court erred in excluding testimony of a clinical psychologist offered by the defense to establish that he lacked the specific intent to commit robbery at, or about, the time of the murder. Appellant asserts that he should have been given the opportunity to establish diminished capacity sufficient to negate the requisite intent to commit robbery as a defense against the robbery charge and against application of the felony murder doctrine.

To date, our Court has deemed psychiatric testimony admissible only to negate specific intent to commit first degree murder. *See Commonwealth v. Terry*, 501 Pa. 626, 631, 462 A.2d 676, 679 (1983); *Commonwealth v. Wein-*

*stein,* 499 Pa. 106, 113, 451 A.2d 1344, 1347 (1982); *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976).[1] In order to establish murder in the first degree, the Commonwealth must prove that the actor specifically intended to kill which, in turn, is shown by proving premeditation and deliberation. *Commonwealth v. Weinstein,* 499 Pa. at 115, 451 A.2d at 1348.

In the instant case, the trial court permitted the appellant's expert, a clinical psychologist, to testify extensively regarding his judgment that Garcia had not formed the specific intent to kill Mrs. Schmid. N.T. 1.679–680, 1.699, 1.753–754.[2] The jury obviously believed the testimony of Garcia's expert on this issue since they found him guilty of second, rather than first, degree murder.

1. In a separate concurring opinion Mr. Justice McDermott incorrectly implies that *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982), introduced "diminished capacity" as a defense to a first degree murder charge. In fact, *Weinstein* restricted the availability of that defense which was first announced in *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976). Specifically, *Weinstein* held that the expert testimony allowable on a diminished capacity defense to first degree murder had to speak to the cognitive processes of deliberation and premeditation and rejected, as irrelevant, irresistible impulse testimony to negate intent to commit that crime.

2. Specifically, appellant's expert testified in response to the following question put to him during direct examination:
 Q. Now, doctor, were you able to reach an opinion with a reasonable degree of scientific certainty as to whether or not Marvin Garcia possessed a specific intent to kill Mrs. Schmid?
 The expert gave the following response:
 A. My opinion is that his intent was, first, to hurt her as he had been hurt, and second to silence her screaming but that he did not intend to kill her.
 Technically, the question was improperly framed. We have held that:
 [P]sychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where ... it does not, it is irrelevant and hence inadmissible.
 *Commonwealth v. Weinstein,* 499 Pa. at 114, 451 A.2d at 1347.
 The question, as posed, did not ask for an opinion as to whether Garcia had the *mental capacity* to entertain the specific intent to kill, in general. This is the type of testimony which should have been presented to the jury. Whether or not Garcia possessed the intent to kill at the time of the particular murder in question was for the jury, alone, to decide.

The trial court correctly sustained the Commonwealth's objection to the following question posed to appellant's expert during direct examination:

Q. All right. Now, Dr. Cooke, were you able to form an opinion with a reasonable degree of scientific certainty as to whether or not Marvin Garcia had an intent to steal anything from Mrs. Schmid prior to or before committing this homicide?

N.T. 1.681. Common Pleas correctly ruled this psychiatric testimony inadmissible. Throughout these proceedings appellant has argued that this testimony is relevant to negate what he calls the specific intent to rob which intent he says, in this case, triggers the operation of the felony murder rule. Precisely, appellant argues that he did not form a specific intent to rob Mrs. Schmid either before or during her murder and that his theft of her property was merely an "afterthought." Consequently, appellant argues that there was no felony murder.

Proper *psychiatric* testimony is admissible only to negate the specific intent required to establish first degree murder. *See Commonwealth v. Weinstein, supra.* Therefore, the determination of whether Garcia ever formed an intent to rob, and if so, when he formed such intent, was required to be made on the basis of the factual circumstances surrounding the criminal episode as developed by demonstrative evidence and testimony other than psychiatric expert testimony.[3]

3. In his concurring opinion Mr. Chief Justice Nix disagrees with this holding. He argues that psychiatric testimony should be admissible to negate "specific intent" with respect to any crime requiring such an element. Our Crimes Code does not include either the expression "specific" or "general" intent. However, we have used the expression "specific intent to kill" to refer to the culpable mental state required for first degree murder which is defined in the Crimes Code as an "intentional killing." *See* 18 Pa.C.S. § 2502(a). The term "intentional killing" in turn, is defined for purposes of first degree murder as a "willful, deliberate and premeditated" killing. 18 Pa.C.S. § 2502(d). The Crimes Code does not use the expression "specific intent" to describe the culpable mental state included as an element of robbery or any other crime. Instead, where the word "intent" describes the culpable mental state for an element of an offense, it is defined as the

actor's "conscious" object to engage in conduct of that nature or to cause such a result. 18 Pa.C.S. § 302(b)(1). In this case appellant argues that psychiatric testimony is admissible to show he was incapable of forming the "intent" or "conscious desire" to steal.

That argument involves the question of whether the defense generally denominated diminished capacity, heretofore recognized in this Commonwealth as available only on a first degree murder charge, *Commonwealth v. Walzack, supra,* should be extended to robbery. That issue is not open to appellant because he admitted the theft which is a necessary component of robbery and by so doing admitted precisely the same "specific" intent, *i.e.,* intent to withhold the property of another, which robbery requires. *See* 18 Pa.C.S. § 3701, § 3901 and § 3921. Furthermore, the question posed at trial which he says raised this issue, *see* at 476, *supra,* is plainly intended to pose the defense that such intent must be formulated before the homicide. In asserting this defense, appellant apparently relies on our decision in *Commonwealth v. Legg,* 491 Pa. 78, 417 A.2d 1152 (1980), in which we held that the felony-murder doctrine is inapplicable where the actor kills prior to forming the intent to commit the underlying felony. As Mr. Chief Justice Nix notes, this holding represented a departure from prior law and has been criticized. However, the issue of whether the defense announced in *Legg* should continue to be the law of this Commonwealth is not before us on this appeal and, therefore, we will not consider it here.

Thus, appellant did not seek to introduce psychiatric testimony to show that he is incapable of forming the conscious desire to steal. In fact, any such contention would be irreconcilable with his defense at trial, *i.e.,* that he is guilty only of third degree murder and theft. Considering these facts, as well as the difference between the "intent" required for first degree murder and the "intent" defined in Section 302 of the Crimes Code for all other crimes which require "intent" as the element of an offense, we are not inclined to use this case as a vehicle to expand the diminished capacity defense beyond first degree murder. Indeed, were we to do so, the so-called limited defense of diminished capacity would become an absolute defense to all those crimes which include in their particular definition mental states of greater culpability than those set forth in our Crimes Code's section on general culpability. *See* 18 Pa.C.S. § 302(c). *See also* 18 Pa.C.S. § 308, which permits evidence of voluntary intoxication, when relevant, only to reduce murder from a higher to a lower degree. Section 308 limits *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975), which more broadly held such evidence relevant under the Penal Code generally to negate intent in the sense of conscious desire. Section 302(b)(1)(i) of our Crimes Code now requires such conscious desire as a mental element of a variety of serious crimes, including most of the old common law felonies, *e.g.* murder, robbery, burglary and that form of theft which was called larceny. Although the defense of intoxication is not entirely analogous to that of diminished capacity (*see* Mr. Justice Eagen, dissenting in *Graves, id.,* 461 Pa. at 128, 334 A.2d at 666) they share the common element of a mental impairment which prevents cognitive formation of intent at the conscious level. Thus, the legislative response to *Graves* indicates a

Appellant next contends that the trial court erred in admitting into evidence three photographs which, he claims, were inflammatory and of little probative value. All of the disputed photographs are in black and white. The first, Exhibit C–4, depicts a meathook resting on top of a milk crate. A large pool of blood on the floor to the right of the crate is visible. The second photograph, Exhibit C–11, shows the bloodied body of the murder victim and the third, Exhibit C–28, represents drag marks transversing a pool of blood on the floor of the grocery store where the murder occurred.

The admission into evidence of photographs depicting the corpse of the homicide victim or the location and scene of the crime lies within the sound discretion of the trial judge. *See Commonwealth v. Hudson,* 489 Pa. 620, 630, 414 A.2d 1381, 1386 (1980); *Commonwealth v. Gilman,* 485 Pa. 145, 152, 401 A.2d 335, 339 (1979); *Commonwealth v. Gidaro,* 363 Pa. 472, 474, 70 A.2d 359, 360 (1950). A photograph which is judged not inflammatory is admissible if "it is relevant and can assist the jury in understanding the facts." *Commonwealth v. Gilman,* 458 Pa. at 153, 401 A.2d at 339. A gruesome or potentially inflammatory photograph is admissible if it is of "such essential evidentiary value that [its] need clearly outweighs the likelihood of inflaming the minds and passions of the jurors." *Commonwealth v. McCutchen,* 499 Pa. 597, 602, 454 A.2d 547, 549 (1982) (quoting *Commonwealth v. Petrakovich,* 459 Pa. 511, 521, 329 A.2d 844, 849 [1974]). The fact that blood is visible in a photograph does not necessarily require a finding that the photograph is inflammatory. *Commonwealth v. Hudson,* 489 Pa. at 631, 414 A.2d at 1387; *Commonwealth v. Sullivan,* 450 Pa. 273, 281, 299 A.2d 608, 612, *cert. denied,* 412 U.S. 923, 93 S.Ct. 2745, 37 L.Ed.2d 150 (1973).

The photograph of the meathook, the murder weapon, is not inflammatory. *See Commonwealth v. Miller,* 268

policy of caution towards the extension of such defenses to all so-called crimes of "specific intent."

314

Pa. Superior Ct. 123, 407 A.2d 860 (1979). Moreover, it had probative value. Among other things, the photograph was relevant to indicate to the jury the brutality of the defendant's attack which supports an inference of specific intent to kill, an element of murder in the first degree. *See Commonwealth v. McCutchen,* 499 Pa. at 602, 454 A.2d at 549; *Commonwealth v. Edwards,* 493 Pa. 281, 290, 426 A.2d 550, 554 (1981).

■ The trial court also correctly ruled that C–11, the photograph of the murder victim, was admissible. While appellant states that C–11 depicts the victim "with her dress up," the fact is that the trial judge ordered the nude portion of Mrs. Schmid's body blocked out. Her badly gored head, also, is not shown. The Commonwealth properly offered this photograph as evidence of the ferocity of appellant's attack which tended to prove premeditation and deliberation. N.T. 1.94. *See Commonwealth v. McCutchen, supra.* In addition, the trial judge found C–11 relevant because it shows the location of the body at the crime scene. N.T. 1.97. Moreover, the record shows that the trial judge took care to exclude highly inflammatory photographs of Mrs. Schmid. Specifically, the judge excluded C–8 which depicts the severe injuries to Mrs. Schmid's face and head. N.T. 1.101. Accordingly, the evidentiary value of this exhibit warranted its admission in evidence notwithstanding its potentially inflammatory nature.

■ Appellant's objection to the photograph of the drag marks is, likewise, unfounded. The photograph is not inflammatory. *See Commonwealth v. Sullivan, supra.* Exhibit C–28 shows the spot to which the appellant dragged the victim's body following the attack. It supports the Commonwealth's contention that Garcia dragged Mrs. Schmid to an area of the store where she was not visible to anyone and then proceeded to steal her property. Undoubtedly, this piece of demonstrative evidence was admissible to aid the jury in reconstructing the factual circumstances surrounding the murder.

Finally, appellant asserts that he was denied a fair trial on account of prosecutorial misconduct. First, he points to the prosecutor's attempt to introduce into evidence his juvenile arrest records in an effort to discredit his mother who testified that her son had never before been in trouble with the law. The trial judge ruled the records inadmissible. Nevertheless, the district attorney continued to question appellant's mother concerning the events culminating in her son's arrest. Eventually, the trial judge sustained an objection by defense counsel to the line of questioning whereupon the prosecutor stated, in the presence of the jury: "My hands are tied. I have no further questions." N.T. 1.637. Defense counsel objected and moved for a mistrial on the ground that the prosecutor attempted to indicate to members of the jury that information concerning the defendant was being withheld from them.[4] N.T. 1.638.

Next, appellant challenges a remark made by the prosecutor during defense counsel's direct examination of a character witness. When asked what people in the community said about Garcia following the murder, the witness replied: "[t]hey didn't believe what had happened." The prosecutor objected that this answer was unresponsive adding: "I am sure the Schmids didn't believe what happened either, your Honor." N.T. 1.649. Appellant maintains that the prosecutor unfairly attempted to prejudice the jury against him.[5]

The prosecutor's comments in both instances were irrelevant and, for that reason, improper. However, they were not prejudicial. Of course, "every unwise or

4. Appellant claims, in addition, that the district attorney "threw her file in the air," apparently, in frustration. However, the trial judge stated that he did not observe any such act. Common Pleas slip op. at 25.

5. The trial judge sustained defense counsel's objection to the prosecutor's comment and, *sua sponte*, issued a curative instruction. However, defense counsel did not move for a mistrial and, consequently, this issue has been waived. Pa.R.Crim.P. 1118(b); *Commonwealth v. Jones*, 501 Pa. 162, 166, 460 A.2d 739, 741 (1983); *Commonwealth v. Brown*, 467 Pa. 512, 517, 359 A.2d 393, 396 (1976).

irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial." *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), *quoted in Commonwealth v. Rolison,* 473 Pa. 261, 273, 374 A.2d 509, 514, *cert. denied,* 434 U.S. 871, 98 S.Ct. 215, 54 L.Ed.2d 150 (1977). As we have frequently stated:

> [C]omments by the Commonwealth's attorney do not constitute reversible error unless the "unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Van Cliff,* 483 Pa. 576, 582, 397 A.2d 1173, 1176 (1979) (citations omitted).

*Commonwealth v. Anderson,* 501 Pa. 275, 282, 461 A.2d 208, 211 (1983). The above-cited comments do not require a new trial under this test. Nevertheless, we take this opportunity to remind public prosecutors of their responsibility to act within the bounds of propriety, both to insure against discipline for unethical conduct and to insure against having convictions on otherwise strong evidence set aside because the reviewing court cannot determine beyond a reasonable doubt that, in a given case, the prosecutor's unnecessary and improper statements did not affect the jury's guilty verdict. *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

 Lastly, appellant characterizes as improper the district attorney's questioning of a Commonwealth expert witness, Dr. Kenneth Kool. Appellant claims that although the Commonwealth never requested Dr. Kool to examine appellant, the prosecutor, nevertheless, asked this witness whether he was given an opportunity to examine Garcia. Appellant argues that the jury probably inferred from this question that he refused the examination. However, the trial judge sustained defense counsel's objection to this question before Dr. Kool responded. It is difficult to see

how the jury could have drawn any inferences whatever from the unanswered question alone. Therefore, the question had no prejudicial effect.

Judgment of sentence affirmed.

FLAHERTY, J., joins in this opinion and files a concurring opinion.

NIX, C.J., files a concurring opinion.

McDERMOTT, J., files a concurring opinion.

FLAHERTY, Justice, concurring.

I join the opinion of the Court authored by Mr. Justice Hutchinson, but write separately inasmuch as I view the admonition of counsel expressed by the majority as a great deal milder than the circumstances warrant. Indeed, inasmuch as this represents our third such experience with this attorney, counsel's behavior suggests a violation of Disciplinary Rule 7–106(A), which provides in pertinent part:

A lawyer shall not disregard ... a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such ruling.

Moreover, I take this opportunity to reassert the position set forth in my authored concurring and dissenting opinion filed in *Commonwealth v. Waters*, 491 Pa. 85, 100–101, 418 A.2d 312, 319–320 (1980), that any inquiry into whether the homicide was perpetrated "in furtherance of" the underlying felony cannot advance the felony-murder doctrine. "[S]o long as the energy initiating the felonious undertaking continues to pervade the felonious atmosphere ... any result engendered by that felonious energy is within the purview of the felony murder doctrine." *Id.*

NIX, Chief Justice, concurring.

I agree that the trial court's ruling sustaining the objection to the question posed to appellant's expert witness during direct examination was correct. I am also of the

view that appellant's argument relating to the proof of the absence of a specific intent to commit the robbery, under the undisputed facts of this case, must be rejected. However, I strenuously disagree with Mr. Justice Hutchinson's bald conclusion that psychiatric testimony is admissible only to negate the specific intent required to establish first degree murder. If the defense had offered proper evidence, either psychiatric or otherwise, to negate the specific intent required by the underlying felony, that evidence should have been submitted to the jury for their assessment in the determination of the applicability of the felony murder principle to the case. Additionally, viewing the entire trial record I agree that the behavior of the attorney for the Commonwealth does not warrant the conclusion that the judgment of sentence must be vacated and a new trial awarded.

## I.

The specific question to which defense counsel was not permitted to receive an answer from his expert medical witness was:

Q. All right. Now, Dr. Cooke, were you able to form an opinion with a reasonable degree of scientific certainty as to whether or not Marvin Garcia had an intent to steal anything from Mrs. Schmid prior to or before committing this homicide?

Whether Marvin Garcia had formed an intent to steal from his victim was exclusively within the province of the jury to decide. The expert witness' role was to advise the jury of any psychiatric disorder that may have affected appellant's capacity to form such an intention. Thus the question properly phrased, after a predicate of the mental problem had been established, would have elicited from the medical expert witness whether appellant's condition would have prevented him from forming the intention required for the commission of the offense. *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976); *see Commonwealth v. Terry*, 501 Pa. 626, 462 A.2d 676 (1983). The failure of

defense counsel to properly frame the question justified the trial court's refusal to permit an answer.

## II.

### A.

The appellant argues that he was denied the opportunity to prove that he did not possess the intent necessary to be convicted of robbery, the felony which underlies his felony murder conviction.[1] While murder of the second degree is not one which necessarily has a requisite specific intent, a specific intent may nonetheless be a required element where the underlying felony requires proof of such an intent. *See Commonwealth v. Waters,* 491 Pa. 85, 418 A.2d 312 (1980); *Commonwealth v. Allen,* 475 Pa. 165, 379 A.2d 1335 (1977); *Commonwealth v. McNeal,* 456 Pa. 394, 319 A.2d 669; *Commonwealth v. Yuknavich,* 448 Pa. 502, 295 A.2d 290 (1972); *Commonwealth v. Myers,* 438 Pa. 218, 261 A.2d 550 (1970). In this case the underlying felony was robbery which does require a specific intent. 18 Pa.C.S. §§ 3701, 3921.

### B.

As previously noted, the appellant should have been permitted to establish by *proper* evidence that he did not have

---

1. Second degree murder is defined in 18 Pa.C.S. § 2502 as follows:
 (b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
 Robbery is defined in 18 Pa.C.S. § 3701 as follows:
 (a)(1) A person is guilty of robbery if, *in the course of committing a theft,* he:
 . . . .
 (v) physically takes or removes property from the person of another by force however slight.
 (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission. (Emphasis added.)
 Theft by unlawful taking or disposition is defined in 18 Pa.C.S. § 3921 as:
 (a) Movable property.—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another *with intent to deprive him thereof.* (Emphasis added.)

the mental capacity to form the intent to deprive required by the crime of robbery. See part I.

Appellant also asserts that even if he did have the capacity to form the requisite intent, the decision to take the victim's property was an "afterthought." This argument focuses upon when that intention was formed. It is not, as implicitly suggested by appellant, a question of the capacity to form the intent.

I have previously expressed my view that it does not matter when the intent to take the property of the victim occurs; it becomes a felony murder when the deadly force is used to accomplish the theft. *Commonwealth v. Butcher*, 451 Pa. 359, 304 A.2d 150 (1973); *see Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A.2d 687 (1971); *Commonwealth v. Waters*, 445 Pa. 534, 285 A.2d 192 (1971), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2073, 32 L.Ed.2d 348 (1972); *Commonwealth v. Wilson*, 431 Pa. 21, 244 A.2d 734 (1968), *cert. denied*, 393 U.S. 1102, 89 S.Ct. 901, 21 L.Ed.2d 794 (1969); *Commonwealth v. Hart*, 403 Pa. 652, 170 A.2d 850, *cert. denied*, 368 U.S. 881, 82 S.Ct. 130, 7 L.Ed.2d 81 (1961); *Commonwealth v. Stelma*, 327 Pa. 317, 192 A. 906 (1937). This view is based upon sound policy which recognizes the difficulty in attempting to ascertain *when* the intent to commit the underlying felony was conceived in any given factual situation. I continue to believe that where the killing was used to effectuate the robbery it is unnecessary to inquire as to whether the intent to kill preceded the intent to rob since the force resulting in death is the force used to accomplish the robbery. *Commonwealth v. Butcher, supra.*[2]

## III.

Moreover, I cannot accept the view that psychiatric testimony should not be permitted to negate specific intent of

---

**2.** I realize that the Court reached a contrary conclusion in *Commonwealth v. Legg*, 491 Pa. 78, 417 A.2d 1152 (1980). After careful consideration I am convinced the Court was in error in departing from the standard set forth in *Commonwealth v. Butcher*, 451 Pa. 359, 304 A.2d 150 (1973), and the numerous cases upon which it relied.

any crime requiring such an element. When the legislature defines a crime by requiring a specific intent, that intent becomes an element which must be established to show that the crime has been committed. *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959). Any evidence which is competent and relevant is generally admissible. *Commonwealth v. Jones*, 459 Pa. 62, 327 A.2d 10 (1974); *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972); *see Commonwealth v. Lippert*, 454 Pa. 381, 311 A.2d 586 (1973). Where the evidence would tend to establish or to negate the existence of a specific intent required by the offense it would be relevant. Thus if competent evidence had been offered to establish appellant's mental incapacity to form a specific intent, it unquestionably would have been relevant where the crime charged is robbery, which requires such a specific intent. *See Commonwealth v. Walzack, supra; Commonwealth v. Terry, supra.*

The only remaining justification for excluding psychiatric testimony offered for this purpose would be that the competency of such evidence is suspect. That unenlightened view, however, has long since been discarded by this Court. *E.g., Commonwealth v. Walzack, supra; Commonwealth v. Jones, supra; Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974); *Commonwealth v. McCusker, supra; Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960); *Commonwealth v. Scovern*, 292 Pa. 26, 140 A. 611 (1927). Any attempt to create additional criteria for the admissibility of psychiatric evidence would represent an anachronistic regression in our thinking. Courts cannot properly substitute their prejudices as to the reliability of this area of medicine in the face of its acceptance by society's recognized authorities in the field.

McDERMOTT, Justice, concurring.

In *Weinstein II*,[1] this court departed from the strictures of the *M'Naghten* rule to allow psychiatric testimony as

1. *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344 (1982).

evidence of diminished capacity in murder prosecutions. The majority did not define what psychiatric evidence is admissible. They may be excused, for while its neologistic patois is the delight of sophomores, its definition varies among its most learned practitioners, too often, some think, to fit the miscreant at hand. Neither did the majority specify the qualification of those who proffer the evidence. Presumably, it is left to the occasion and fashion.

In my memorandum opinion in *Weinstein II*, I faulted the use of psychiatric evidence except as an insanity defense under *M'Naghten.*

Whatever the consequence may be following a verdict of insanity, the consequences do not invalidate the legitimate defense of insanity. Insanity, is as it must be among civilized people, a defense and excuse for an act. It must, however, be pleaded and its basis be defined. The long standing *M'Naghten* rule, the law in Pennsylvania, sets the standard exactly:

> [A]t the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know what he was doing was wrong.

*Commonwealth v. Roberts,* 496 Pa. 428, 434, 437 A.2d 948, 951 (1981); *Commonwealth v. Woodhouse,* 401 Pa. 242, 249–250, 164 A.2d 98, 103 (1960), quoting *Queen v. M'Naghten,* 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843).

I concur with the majority in holding that psychiatric evidence, whatever it may be, is inadmissible to dilute the specific intent to rob, as I would hold for any offense, including murder.

I also believe that when the full gamut of psychological excuses are spread across homicide records, *Weinstein II* will become one with the once fashionable theories of Lombroso and other physiognomists and head bump counters.