J-A26030-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRED AVERY, JR. | |
| Appellant | No. 1192 EDA 2020 |

Appeal from the PCRA Order March 6, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0002607-2015

BEFORE: BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 11, 2022**

Appellant, Fred Avery, Jr., appeals *pro se* from the March 6, 2020 order entered in the Court of Common Pleas of Philadelphia County dismissing his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Upon review, we affirm.

The PCRA court summarized the factual and procedural history of the case as follows.

> The underlying charges stem from Appellant's vicious stabbing of three Philadelphia Correctional Officers with his previously hidden six[-]inch sharpened timing bolt while in county custody on November 17, 2014.  Just prior to the attack, Appellant, then an inmate at [the] Philadelphia Correctional Center, ("PICC"), had a verbal and physical altercation with his then-cellmate, Brad Root.  Duly assigned Correctional Officer Richard Hull observed Appellant "slapping" Root on the common area day room table and approached the men to break up that fight.  Officer Hull told Appellant to go back to his cell.  Although he refused at first, he

eventually complied.  On the way to his cell, Appellant repeatedly threatened Officer Hull, telling him "I'm going to kill you when I come out."  After Officer Hull placed him back in his cell, he had informed Appellant that he would need to pack his belongings because he was being sent to a disciplinary unit for making terroristic threats and engaging in a fight with his cellmate.  Officer Hull then contacted Sergeant Truehart, his supervisor, to aid with transferring Appellant to the aggregate unit.

When Officer Hull returned to Appellant's cell with Sergeant Truehart, he told Appellant to back away from the door.  As the officers unlock[ed] the cell door, Appellant physically charged them.  Sergeant Truehart deployed his pepper spray, which only infuriated Appellant.  As the two officers attempted to restrain him, Appellant grabbed a homemade deadly weapon that had been hidden behind . . . his cell toilet.  This particular weapon was made out of a six-inch timing bolt or screw and was referred to as a "banger or whack" in prison.  Appellant then used this weapon to repeatedly puncture Officer Hull in the head and back area and Sergeant Truehart in the eye.  Emergency response was called, and a third correctional officer arrived, Officer Bruce Sowell.  As Officer Sowell attempted to assist, he observed the weapon in Appellant's hand and the blood splatted on the officers.  Appellant also stabbed Officer Sowell twice in his hand during the struggle to restrain him.

As a result, all three victim correctional officers were transported to the Aria Hospital Torresdale Division for treatment of multiple significant injuries.  Officer Richard Hull received 4-5 inch deep puncture wounds to his neck and back, which after being treated in the hospital, caused him to miss work for over a year.  Additionally, he was diagnosed with Post-[T]raumatic Stress Disorder ("PTSD") and Depression as a result of the attack.  Sergeant Truehart received a puncture wound on the top of his left eye, had to get four stiches, and lost motility in his eye.  He was also out of work for a year and now suffers from PTSD.  Officer Sowell received two puncture wounds to his left hand that needed sutures to repair.

Appellant was formally arraigned on April 6, 2015.  Mythri Jayaraman, Esquire from the Mental Health Unit of the Defender Association of Philadelphia was assigned as his counsel and his case was listed for pre-trial conferences before the Honorable Robert P. Coleman Judge of the First Judicial District Court of

Common Pleas. Defense raised the issue [of] Appellant's mental competence to stand trial due to Appellant's uncooperative behavior and requested he receive a mental health evaluation. After the evaluation, on June 3, 2015, Appellant was found to be competent.

Subsequently, on August 27, 2015, the Honorable Sheila Woods-Skipper Judge of the First Judicial District Court of Common Pleas found Appellant to be incompetent and entered an Order committing [Appellant] under the Mental Health Procedures Act for further treatment. On October 29, 2015, after further evaluation the Honorable Jeffrey P. Minehart Judge of the First Judicial District Court of Common Pleas found [Appellant] to be competent, but in need of continued treatment. [Appellant] was subsequently committed to the Detention Center Forensic Unit for sixty (60) days of treatment.

The case was subsequently reassigned to the Honorable Anne Marie B. Coyle Judge of the First Judicial District Court of Common Pleas . . . for scheduling conference on December 2, 2015. Appellant was deemed competent on April 29, 2016 after review of all updated mental health evaluations. All parties and counsel acknowledged Appellant's competence to stand trial. On November 8, 2016, following execution of verbal and written colloquies, Appellant waived his right to a trial by a jury, and opted for a bench trial before the Honorable Anne Marie Coyle, hereinafter referred to as [the trial court], which took place immediately following the waiver of jury. Assistant Defender Paul Downing, Esquire of the Mental Health Unit of the Defender Association of Philadelphia was assigned as Appellant's trial counsel. Assistant District Attorney Michael Luongo, Esquire was assigned to represent the Commonwealth of Pennsylvania . . . at trial.

After hearing testimony from both sides, [the trial court] found Appellant guilty of all charges: [(1) aggravated assault, (2) possession of an instrument of crime, (3) simple assault, (4) recklessly endangering another person, (5) aggravated assault, (6) possession of an instrument of crime, (7) simple assault, (8) recklessly endangering another person, (9) criminal attempt – murder, (10) terroristic threats with intent to terrorize another, (11) aggravated assault, (12) possession of an instrument of crime, (13) introduce weapon may be used to escape, (14) simple

assault, (15) recklessly endangering another person, and (16) criminal attempt – murder].

Following entry of guilty verdicts, [the trial court] directed completion of Presentence Evaluations and Mental Health Evaluations by the First Judicial District Probation and Parole Department. Appellant's sentencing hearing took place on March 29, 2017. After review of all completed presentence reports and consideration of all relevant data submitted concerning Appellant at a full and fair hearing, [the trial court imposed an aggregate sentence of imprisonment of 27.5 years to 55 years], followed by fifteen (15) years of state supervised reporting probation. Additionally, Appellant was ordered to be administratively segregated while in custody while awaiting transition and to facilitate dual diagnosis treatment to address . . . both his mental health and drug alcohol addictions. Rehabilitative conditions were imposed.

Appellant's trial counsel filed a Motion for Reconsideration of Sentence the same day that [Appellant] was sentenced. A motions hearing took place on April 6, 2017, wherein [the trial court] vacated the original sentence and imposed a sentence that in effect reduced the aggregate period of confinement. [The modification involved only the aggravated assault conviction involving Correctional Officer Sowell in light of the mildness of the injury sustained by Officer Sowell compared to the other two officers]. Appellant's aggregate sentence was altered to reflect a minimum period of confinement of twenty-five (25) years state incarceration to a maximum period of confinement of fifty-five (55) years, followed by fifteen (15) years of state supervised and conditioned probation.

On November 13, 2017, a counseled appeal was filed on behalf of Appellant . . .[, which our Court discontinued on July 27, 2018, upon Appellant's filing of a praecipe for discontinuance].

On May 3, 2019, Appellant filed a [*pro se* PCRA petition, in which he raised several errors. *See infra* note 2].

On June 5, 2019, Jennifer Tobin, Esquire[,] was appointed as Appellant's PCRA counsel. On January 23, 2020, after full investigation and conferences with her client, Attorney Jennifer Tobin filed and forwarded to Appellant a "***Finley***" letter identifying and explaining her legal opinion that no merit to the PCRA claims

as raised had existed. This correspondence also included Attorney Tobin's filed Motion to Withdraw as appellate counsel. Upon notification by counsel of the filing, [the PCRA court] filed and forwarded to Appellant written notification of [the PCRA court]'s intention to formally dismiss all requests for relief pursuant to Pa.[R.Crim. 907].

Thereafter, on February 19, 2020, Appellant filed a [*pro se* response to the PCRA Court's Rule 907 Notice]. On March 6, 2020, the PCRA Court filed an Order dismissing Appellant's PCRA petition and granting counsel's motion to withdraw. On May 18, 2020, Appellant filed a *pro se* Notice of Appeal to the Superior Court of Pennsylvania.

PCRA Court Opinion, 7/23/20, at 1-8 (footnote and citations to the record omitted).

We first must address the timeliness of the instant appeal. A review of the record reveals that it should have been filed within 30 days of the March 6, 2020 order. The trial court docket, however, shows that it was filed on May 18, 2020. Pursuant to the Supreme Court's April 28, 2020 order entered in response to the COVID-19 pandemic, legal papers which were required to be filed between March 19, 2020, and May 8, 2020, generally shall be deemed to have been filed timely if they are filed by May 11, 2020. *See In Re: General Statewide Judicial Emergency*, Nos. 531 and 532 Judicial Administrative Docket, at 5 (Pa. filed April 28, 2020). Thus, the instant appeal, which was filed on May 18, 2020, is facially untimely.

It appears, however, that the notice of appeal, dated April 3, 2020, but postmarked April 7, 2020, was received by the Office of Judicial Records – Appeals/Post Trial in Philadelphia on May 18, 2020, whereas a copy of the

same notice mailed apparently on the same date was received by the PCRA Judge in Philadelphia (same zip code as the Office of Judicial Records) on May 8, 2020. There is no explanation why one envelope arrived on May 8, 2020 (within the deadline set by the Supreme Court) and the other one arrived on May 18, 2020 (outside the deadline set by the Supreme Court), despite the fact the envelopes were mailed (apparently) on the same day and sent to addresses located within the same zip code.

In addition to the administrative breakdown described above and other issues regarding the trial court's compliance with Pa.R.Crim.P. 114(C)(2)(c) and Pa.R.Crim.P. 907(4), we also observe that the notice of appeal, which, as noted, is dated April 3, 2020 (and presumably delivered to the prison authorities around the same time), and postmarked April 7, 2020, was timely filed under both the prisoner mailbox rule and the April 28, 2020 Order of our Supreme Court. Furthermore, considering the Commonwealth does not challenge the timeliness of this appeal, we find the instant appeal timely without need for remand. *See Commonwealth v. Cooper*, 710 A.2d 76, 79 (Pa. Super. 1998).

On appeal, Appellant raises the following issues for our review:

1) Whether the PCRA court committed an error in law by determining that Appellant's PCRA petition was untimely?

2) Whether trial counsel rendered ineffective assistance by failing to present a mental health expert at trial or at sentencing to show that Appellant was free from criminal liability in this matter?

3) Whether the court below abused its discretion by denying PCRA counsel's motion for appointment of a (mental health) Expert Witness thereby denying Appellant the opportunity to prove his claim?

Appellant's Brief at 3 (verbatim).

"[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citation omitted).

In his first claim, Appellant argues that the PCRA court erred in concluding that his PCRA petition was untimely. The claim has no merit as timeliness was not the basis for the court's decision. While the order dismissing the petition states that the petition was untimely, a review of the Rule 907 Notice, Appellant's response to Rule 907 Notice, and PCRA court's Rule 1925 opinion dispel any ambiguity as to the actual ground of dismissal: the PCRA court found that Appellant's claims have no merit. Appellant is therefore entitled to no relief on his first claim.

In his second claim, Appellant argues that trial counsel was ineffective for "failing to present a mental health expert at trial or at sentencing to show that Appellant was free from criminal liability in this matter." Appellant's Brief, at 3. His latest argument, contained within the argument section of his brief, recasts his argument that trial counsel was ineffective to show that Appellant was free of criminal liability by pursuing a "'lack of criminal liability defense' .

. . under the Mental Health Procedures Act"[1], citing 50 P.S. §§ 7402, 7403. Appellant's Brief at 21. Our review of the record additionally reveals that at various points in the past, Appellant also has argued that counsel was ineffective for failing to pursue a diminished capacity defense. Together, the thrust of this claim by Appellant is that he suffered from some sort of mental deficit at the time of the offenses and that trial counsel was ineffective for not pursuing his mental deficit as a defense at the time of trial and sentencing. For sake of completeness, we will address these various iterations of Appellant's "defenses". Additionally, while not raised by Appellant, we briefly will discuss the insanity defense and guilty by mentally ill verdict to place Appellant's arguments in context.

In addressing ineffective assistance of counsel claims, we are guided by the following authorities:

> [A] PCRA petitioner will be granted relief [for ineffective assistance of counsel] only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." **Commonwealth v. Colavita**, 993 A.2d 874, 886 (Pa. 2010) (citing **Strickland v. Washington**, 466 U.S. 668, 687 (1984)). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See Commonwealth v. Pierce**, 786 A.2d 203, 213 (Pa. 2001). Thus, to prove counsel ineffective, the petitioner must

---

[1] The Mental Health Procedures Act ("MHPA"), **see** 50 P.S. §§ 7101–7503.

show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, 10 A.3d 282, 291 (Pa. 2010).

**Spotz**, 84 A.3d at 311-12 (citations modified).

A successful insanity defense leads to an acquittal where the defendant proves that, at the time of the offense, the defendant was under such a defect of reason, from a disease of the mind, as to not know the nature and quality of the defendant's act or, if the defendant did know it, that he did not know that what he was doing was wrong. **See** 18 Pa.C.S.A. § 315. Section 315 of the Crimes Code provides that the "mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense" when the defendant was legally insane. **See** 18 Pa.C.S.A. § 315(a); **see also Commonwealth v. Walzack**, 360 A.2d 914, 916 (Pa. 1976) ("[T]oday's decision *in no way affects the vitality of the M'Naghten test as the sole standard in this Commonwealth for determining criminal responsibility where the actor alleges mental illness or defect*) (footnoted omitted, emphasis added). Additionally, we note that personality disorders, alone, are insufficient to raise an insanity defense. **See Commonwealth v. Banks**, 521 A.2d 1 (Pa. 1987): "Certainly neither social maladjustment, nor lack of self-control, nor impulsiveness, nor psycho-neurosis, nor emotional instability, nor chronic malaria, nor all of such conditions combined, constitute insanity within the criminal conception of that term." **Id.** at 15 (quoting **Commonwealth v. Neill**, 67 A.2d 276, 280 (Pa. 1949)).

- 9 -

Here, there is nothing in the record, nor does Appellant argue otherwise, whether in his PCRA petition, on appeal, or in any other document filed thus far, that Appellant was insane (or similar wording to that effect) at the time he committed the offenses. Thus, we need not discuss the legal insanity defense further.

Because there was no ground to pursue a legal insanity defense, trial counsel could not have pursued a guilty but mentally ill verdict. Mentally ill is defined as one "who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." 18 Pa.C.S.A. § 314(c)(1). Section 314 of the Crimes Codes, in relevant part, provides:

> A person who timely **offers a defense of insanity** in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

18 Pa.C.S.A. § 314(a) (emphasis added). That is, a verdict of guilty but mentally ill is authorized only if the defendant offers an insanity defense and that defense fails. *See*, *e.g.*, *Commonwealth v. Yasipour*, 957 A.2d 734, 742 (Pa. Super. 2008); *Commonwealth v. Hatfield*, 579 A.2d 945 (Pa. Super. 1990). Importantly, "a defendant found to be guilty but mentally ill is entitled to no reduction in sentence." *Yasipour*, 957 A.2d at 742 (citation and quotation marks omitted). Thus, we likewise eliminate from Appellant's

arguments any suggestion that a failure to pursue a "guilty but mentally ill" verdict may afford him collateral relief.

Next, a defendant charged with first-degree murder who does not meet the legal insanity defense standards, but nonetheless operated under a limited mental capacity, may pursue a "diminished capacity" defense. "To establish a diminished capacity defense, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised, by mental defect or voluntary intoxication, that he was unable to formulate the specific intent to kill." *Commonwealth Hutchinson*, 25 A.3d 277, 312 (Pa. 2011) (citing *Commonwealth v. Rainey*, 928 A.2d 215, 237 (Pa. 2007), and *Commonwealth v. Spotz*, 896 A.2d 1191, 1218 (Pa. 2006)). Diminished capacity is not a justification or excuse; it "is essentially a rule [of evidence] that permits the admission of expert testimony to disprove an element of first-degree murder (*mens rea*) and that requires the judge to comment on the expert evidence in a way that ensures that the jury will give it neither too much nor too little weight." Standard Criminal Jury Instructions, 5.01B; *see also Hutchinson*, 25 A.3d at 312 ("A diminished capacity defense does not exculpate the defendant from criminal liability entirely, but instead negates the element of specific intent" to kill and may be grounded in mental defect

or voluntary intoxication[2] (internal quotation marks and citations omitted));
*United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987). Diminished
capacity "is an extremely limited" defense. *Commonwealth v. Tharp*, 101
A.3d 736, 756 (Pa. 2014). In fact, if established, the defense operates only
to negate premeditation and if successful, reduces a first-degree murder
charge to third-degree murder. *Id.*; *see also Hutchinson*, *supra*;
*Commonwealth v. McCullum*, 738 A.2d 1007, 1009 (Pa. 1999); *Scott*, 578
A.2d at 940 n.18. Additionally, "[o]ur Supreme Court has indicated that the
diminished capacity defense operates only to negate the specific intent
required for first degree murder, *and it is not available for other specific intent
crimes*." *Scott, supra* (emphasis added) (citing *Commonwealth v. Terry*,
521 A.2d 398, 404 (Pa. 1987)); *see also Commonwealth v. Garcia*, 479
A.2d 473 (Pa. 1984); *Commonwealth v. Swartz*, 484 A.2d 793 (Pa. Super.
1984).[3] A "diagnosis with a personality disorder does not suffice to establish

---

[2] There is no claim that Appellant's mental capacity at the time of the offenses
was limited due to voluntary intoxication. While "[t]he factual circumstances
under which a voluntary intoxication diminished capacity defense could be
mounted are obviously different than those which would warrant a mental
deficit diminished capacity defense," *Commonwealth v. Mason*, 130 A.3d
601, 630 (Pa. 2015), as noted above, the diminished capacity-mental defect
defense and the diminished capacity-voluntary intoxication defense operate
the same way, and if proven, they both result in mitigating first-degree
murder to third-degree murder. *Id.*; *see also Hutchinson*, *supra*.

[3] Our Courts have repeatedly affirmed the same position in connection with
diminished capacity-voluntary intoxication. *See*, *e.g.*, *Commonwealth v.
Williams*, 730 A.2d 507, 512 (Pa. Super. 1999); (voluntary intoxication is not
*(Footnote Continued Next Page)*

diminished capacity." **Mason**, 130 A.3d at 631 (Pa. 2015) (citing **Hutchinson**, 25 A.3d at 312) (citations and footnote omitted).

Here, Appellant was not charged with first-degree murder. In fact, Appellant was charged with attempted murder. Accordingly, the diminished capacity defense was not available to him.[4] Trial counsel therefore could not be deemed to be ineffective for not pursuing a diminished capacity defense.

Even if a diminished capacity defense was available to Appellant, evidence of a specific intent to kill may disprove a defense of diminished capacity. **See Commonwealth v. Legg**, 711 A.2d 430, 435 (Pa. 1998). Here, as recounted by the PCRA court, **see** PCRA Court Opinion, 7/23/20, at 15-16, evidence about specific intent was so overwhelming that we likewise cannot conclude that counsel's failure to raise a diminished capacity defense resulted in ineffective assistance of trial counsel.

While Appellant also argues that Section 7404(b) of the MHPA provides a defense separate from other defenses based on a person's mental capacity at the time of the crimes, Appellant provides only conclusory statements

---

a defense to attempted murder). This position remains unchanged even after **Commonwealth v. Fisher**, 80 A.3d 1186 (Pa. 2013) (conspiracy to commit third-degree murder is a cognizable offense). **See, e.g., Commonwealth v. Squillaciotti**, No. 1239 EDA 2013, 2014 WL 10917019, at *3, n.2 (Pa. Super. 2014), *appeal denied* **Commonwealth v. Squillaciotti**, 105 A.3d 737 (Pa. 2014) (voluntary intoxication is unavailable in conspiracy or attempt cases).

[4] Appellant readily acknowledges the inapplicability of the diminished capacity defense here. Appellant's Brief at 23.

devoid of any support in the law. **See** Appellant's Brief at 23-24. In fact, at a Section 7403 hearing, consideration and determination of whether Appellant was criminally responsible "shall [be done] in accordance with the rules governing the consideration and determination of the same issue at criminal trial." 50 P.S. § 7404(a); **see also Scott**, 578 A.2d at 937-38. Thus, defenses to criminal responsibility are the same whether at a Section 7403 hearing or at trial. We find no authority for Appellant's argument that there is a separate Section 7404 "lack of criminal responsibility" defense for use at trial under the MHPA. To the contrary, in **Scott**, a case repeatedly cited by Appellant, our Court noted:

> The Mental Health Procedures Act specifically provides that even if the court refuses to enter a pre-trial acquittal based on a lack of criminal responsibility, the defendant still "may raise the defense at such time as he may be tried." **See** 50 Pa.Stat.Ann. § 7404(a). Thus, the precise issue that Scott seeks to have reviewed at this time—*i.e.*, whether he was legally insane at the time he committed these offenses and thus should be acquitted on all charges—can be presented to the fact-finder at his upcoming trial. If the jury rejects Scott's insanity defense, he still will be free to challenge that finding on a direct appeal. On the other hand, if the fact-finder accepts Scott's argument and acquits him of all charges, it would obviate the necessity for any appeal relating to criminal responsibility.

**Scott**, 578 A.2d at 941 (internal citation omitted).

Accordingly, we conclude that trial counsel was not ineffective for not separately raising a MPHA Section 7404 defense of "lack of criminal responsibility", since this reference does not provide for any additional mental health defenses than otherwise available at law.

Because Appellant's claim that trial counsel was ineffective for not raising as a defense Appellant's mental deficit at the time of the crimes has no merit, we need not address the remaining prongs of the ineffective assistance of counsel standard. ***See Spotz***, ***supra***. ***See also Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 780 ("A petitioner must prove all three factors . . ., or the claim fails.") (internal citations omitted).

In his last claim, Appellant argues that the PCRA court abused its discretion in denying PCRA's counsel application for pre-approval of fees for a psychiatric evaluation to prove "lack of criminal liability defense" under the MHPA. Appellant's Brief at 23 (citing ***Scott***, ***supra***).[5]  In support of his application, Appellant argues that under ***Commonwealth v. Santiago***, 855 A.2d 682 (Pa. 2004), the PCRA court was supposed to hold a "retrospective hearing to establish his mental state at the time of the incident." ***Id.*** at 24. We disagree.

In ***Santiago***, a plurality of the Supreme Court held that the failure to raise on direct appeal a claim that the appellant was incompetent at the time of trial does not constitute a waiver of that claim for purposes of the PCRA. Additionally, the Supreme Court identified the circumstances under which a retrospective hearing for purposes of determining defendant's competency at

---

[5] As we have noted above, there is no separate defense under the MHPA.

the time of trial should be held. Appellant's reliance on **Santiago** is misplaced. In **Santiago**, the Supreme Court addressed competency to stand trial, not defenses to criminal liability. **See Santiago**, 855 A.2d at 692-94. Appellant is not arguing that he had competency issues at trial. As noted, the thrust of Appellant's ineffectiveness claim is that Appellant suffered from mental issues affecting his cognitive functions at the time of the offenses. Because **Santiago** deals with competency at the time of trial, and not mental health at the time offenses were committed, reliance on **Santiago** is misplaced. Therefore, Appellant is not entitled to relief on his claim that the PCRA court erred or abused its discretion in denying his motion for pre-approval of fees for a psychiatric evaluation in connection with his PCRA petition.[6]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2022

---

[6] While Appellant seems to have limited his request for funds for purposes of a "MPHA defense," our conclusion encompasses also the other defenses discussed above.