437 A.2d 948

**COMMONWEALTH of Pennsylvania,**

v.

**Thomas ROBERTS, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 22, 1981.

Decided Dec. 17, 1981.

Philip D. Lauer, Easton, for appellant.

Robert A. Freedberg and Domenic P. Sbrocchi, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Thomas Roberts, Jr., was convicted of murder of the third degree following a non-jury trial and sentenced to a term of ten to twenty years' imprisonment. On this direct appeal he raises a number of alleged errors in support

of his contention that he should be granted a new trial. Our review of the record convinces us that there is no basis for relief, and we accordingly affirm judgment of sentence.

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented at trial establishes that at about 6:00 a. m. on April 1, 1978, appellant entered Otto's Café in Wilson Borough, Northampton County, by kicking in the front door. Upon hearing the intruder, the victim, Otto Ehritz, proprietor of the café, went downstairs from his residence on the second floor of the building, carrying his gun. His wife also went downstairs, using another set of steps. Mrs. Ehritz testified that as she went through the downstairs kitchen approaching the bar, she heard a shot. When she reached the bar area, she saw her husband slumped over a bottle cooler and appellant holding up his body. Appellant then fired a shot at her. As she fled back upstairs, she heard two more shots. She told her daughter to call the police, and both women then ran to second-floor windows and called for help. Shortly thereafter, the police arrived and apprehended appellant a short distance from the café.

An autopsy of the victim disclosed three bullet wounds. According to the Commonwealth's pathologist, the first bullet caused a superficial wound in the neck; the second entered the left side of the victim's face and perforated an area of the brain; and the third, fired from extremely close range, penetrated the victim's left temple and exited from the right side of his head.

The Commonwealth initially charged appellant with murder of the first degree, but later certified that the charge rose no higher than murder of the third degree. Appellant defended on the ground that he was legally insane at the time he committed the act.

Appellant's first contention is that the trial court erred in refusing his request for a change of venue. Had a change

of venue been granted, appellant argues, he might have chosen to be tried by a jury instead of by a judge.

The disposition of a motion for a change of venue is within the sound discretion of the trial court. *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Powell,* 459 Pa. 253, 328 A.2d 507 (1974). Appellant concedes that the publicity in his case was factual and not inflammatory. Compare *Rideau v. Louisiana,* 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963); *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209 (1973). Moreover, the news articles of which appellant complains appeared in early April, 1978, five months before appellant's trial. Such a lapse of time was sufficient to permit any possible prejudice that the news stories might engender to fade from the minds of prospective jurors. *Commonwealth v. Kichline,* 468 Pa. 265, 276, 361 A.2d 282, 288 (1976) (citing cases). In these circumstances, the trial court denied the requested change of venue, concluding that it was possible to select jurors who had no fixed opinion as to appellant's guilt. *Commonwealth v. Powell,* supra; *Commonwealth v. Hoss,* 445 Pa. 98, 283 A.2d 58 (1971). Such a conclusion was not an abuse of discretion, and appellant's claim that the denial of a change of venue chilled his right to a jury trial must therefore fail. *Commonwealth v. Dobrolenski,* 460 Pa. 630, 639, 334 A.2d 268, 272 (1975).

Appellant next challenges the admission at trial of statements which he made to police and to a physician at the time of his arrest and shortly thereafter. At the moment of his apprehension, appellant stated, "I did it with a knife; I did it with a knife." A few moments later, after receiving his *Miranda* warnings and without having been asked any questions, appellant stated to police, "I only wanted a drink. I'm an alcoholic. I stabbed a man. I did something bad." Two hours later, during the course of a conversation with Dr. Robert Stein, a physician who later testified for the Commonwealth, appellant asked the doctor if there was a death penalty in Pennsylvania and also whether he would have a

lawyer to help defend him. At the time Dr. Stein was not asking appellant questions related to the killing.

Appellant admits that each of these statements was volunteered, and that "there was little activity of the police calculated to, expected to, or likely to, evoke admissions." [*] As this Court has noted,

"[v]oluntary statements are admissible because they are the product of choice or conscience rather than compulsion. A volunteered confession has its genesis in the mind of the declarant who speaks with a free will, uninfluenced by any form of official coercion."

*Commonwealth v. Hamilton*, 445 Pa. 292, 296, 285 A.2d 172, 174 (1971). Accord, *Commonwealth v. Powell*, supra, 459 Pa. at 257, 328 A.2d at 509. See *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). Thus it is clear that the statements whose admission appellant challenges were volunteered in the constitutional sense. See *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

The Commonwealth did not seek to admit these statements for their truth. Because the victim was shot, appellant's admission that he "stabbed a man" would hardly have been helpful in proving his commission of the crime. Rather, the statements formed the basis for the conclusion of the Commonwealth's expert witness that appellant was legally responsible for his act.

Appellant's three remaining contentions all involve the issue of his criminal responsibility. Appellant first argues that a hypothetical question posed to the Commonwealth's expert witness relating to appellant's legal responsibility should not have been permitted. He further argues that, even if the question was properly admitted, the Commonwealth failed to sustain its burden of proving appellant's sanity beyond a reasonable doubt. See *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). Finally, he argues in the alternative that, in light of his mental condi-

[*] Brief for Appellant at 19.

tion, he should have been found guilty of no more than voluntary manslaughter.

The test for legal insanity in this Commonwealth is the *M'Naghten* Rule, which absolves a defendant of criminal responsibility if "at the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know what he was doing was wrong." *Commonwealth v. Woodhouse*, 401 Pa. 242, 249–50, 164 A.2d 98, 103 (1960), quoting *Regina v. M'Naghten*, 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843). Psychiatrists for both the Commonwealth and the defense agreed that appellant was suffering from paranoid schizophrenia. However, they disagreed as to whether, at the time of the act, appellant knew what he was doing or realized that what he was doing was wrong.

As part of its case establishing appellant's legal sanity, the Commonwealth posed a hypothetical question to Dr. John Roop, a licensed psychiatrist who had examined appellant. Dr. Roop was asked to assume an extensive list of facts established by the Commonwealth's evidence. He was then asked whether he had an opinion as to whether a hypothetical individual to whom these facts applied would be able to comprehend the nature and quality of his act and to distinguish between right and wrong. Appellant concedes that all facts stated in the question were of record but complains that the question omitted certain other facts which allegedly could have influenced Dr. Roop's opinion. It is settled, however, that a hypothetical question need not be based on every fact of record. To the extent that opposing counsel believes that relevant facts have been omitted, he is of course free on cross-examination to pose his own hypothetical question which includes those facts. *Battistone v. Benedetti*, 385 Pa. 163, 170, 122 A.2d 536, 539 (1956); *Gillman v. Media, Middletown, Aston & Chester Electric Ry. Co.*, 224 Pa. 267, 73 A. 342 (1909). Thus the challenged question was properly allowed.

■ As to appellant's claim that the Commonwealth failed to prove his sanity beyond a reasonable doubt, "our standard of review is a limited one. Psychiatric testimony, like any other evidence, is for the trier of fact to consider and to determine what weight it should be given." *Commonwealth v. Whitfield*, 475 Pa. 297, 302, 380 A.2d 362, 364–65 (1977). See *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972). Although conflicting testimony was presented as to whether appellant understood the nature of his act and knew that it was wrong, our review of the record convinces us that the trial judge, sitting as factfinder, had adequate evidence from which to conclude that the Commonwealth had borne its burden of proving appellant's sanity beyond a reasonable doubt.

■ Similarly, the trial judge had ample evidence from which to conclude that appellant was guilty of murder of the third degree as opposed to voluntary manslaughter. Psychiatric testimony may of course be admitted to establish that a defendant acted in the heat of passion when he committed a homicide. *Commonwealth v. McCusker*, supra. However, as with the question of appellant's sanity, the weight to be given that testimony is a decision for the trier of fact. *Commonwealth v. Whitfield*, supra; *Commonwealth v. McCusker*, supra. Having chosen not to credit the evidence presented by appellant in support of a verdict of voluntary manslaughter, the factfinder could permissibly infer the malice required to establish murder of the third degree from appellant's firing of a gun at point-blank range into the victim's head. *Commonwealth v. Palmer*, 448 Pa. 282, 288, 292 A.2d 921, 923 (1972) ("Malice is properly implied when a deadly weapon is directed to a vital part of the body."); *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A.2d 108 (1970). See *Commonwealth v. Whitfield*, supra.

As we conclude that none of appellant's claims merits the granting of a new trial, we affirm judgment of sentence.

Judgment of sentence affirmed.