527 A.2d 161

**COMMONWEALTH of Pennsylvania**

v.

**Gary Lynn BROZIK, Appellant.**

Superior Court of Pennsylvania.

Submitted March 9, 1987.

Decided May 29, 1987.

Anthony Dedola, Uniontown, for appellant.

Andrea F. McKenna Deputy Attorney General, Harrisburg, for Com.

Before CIRILLO, President Judge, and CAVANAUGH and HESTER, JJ.

HESTER, Judge:

This appeal from judgment of sentence follows Gary Lynn Brozik's convictions by jury of homicide by vehicle, homicide by vehicle while driving under the influence, failure to report accident to police, reckless driving, failure to drive vehicle at safe speed and driving without a license. Following the denial of post-verdict motions, the court sen-

tenced appellant to three and one-half to seven years imprisonment for homicide by vehicle while under the influence, and imposed no additional penalty for the other convictions. This appeal followed.

The facts of the case are as follows. On August 10, 1985, at approximately 8:20 P.M., twelve year old Christian Joseph was riding his bicycle on Oliver Street in Uniontown. As he turned left into an alley, appellant's automobile struck him and sent him flying. Appellant never stopped his vehicle. Four days later, Christian Joseph died as a result of traumatic head injury.

Uniontown Police Sergeant Earl Wright and Pennsylvania State Police Trooper Howard Judy sought appellant at his residence in Lemonwood Acres Housing Project. Earlier that day, both policemen had unsuccessfully pursued appellant for reckless driving and speeding. In one incident, appellant sped away from a traffic light upon the approach of Trooper Judy, and eluded Judy in the ensuing chase. In the other incident, police officer Wright pursued appellant for speeding, but subsequently abandoned the chase.

A third officer, Pennsylvania State Police Trooper Robert Allan, had also pursued appellant about three hours before the fatal accident. Trooper Allan had pulled his vehicle across appellant's path, but appellant's automobile jumped the sidewalk, scattering a group of pedestrians, and struck the front of the patrol car before speeding away. Trooper Allan recognized appellant as Gary Brozik.

Fifteen minutes after the Brozik vehicle struck Christian Joseph, Trooper Judy did indeed find appellant in Lemonwood Acres with the aid of a group of neighbors standing outside. Appellant was knocking at the front door of his house, his clothing was disheveled, his trousers were urine-soaked, his speech was slurred, and his eyes were glassy and bloodshot. Judy placed appellant under arrest.

Appellant asserts that the trial court erred in permitting the introduction into evidence of the blood alcohol examination. The following facts are pertinent to this issue. Following appellant's arrest at approximately 8:35 P.M., Troop-

er Judy transported appellant to the Uniontown barracks of the Pennsylvania State Police. In keeping with departmental policy, appellant was not permitted to ingest anything. The police attempted to administer an intoxilyzer test to appellant, but when the machine malfunctioned, they took appellant to Uniontown Hospital for a blood test at approximately 10:00 P.M. A blood sample was drawn which indicated a blood alcohol content of .15%.

At the supplemental suppression hearing on December 18, 1985, the parties stipulated as follows:

> [T]hat on August 10, 1985, at approximately 10:30 p.m., blood was drawn from the defendant, Mr. Brozik, at the Uniontown Hospital by medical personnel there. That blood was immediately turned over to Trooper Robert Allan, who then refrigerated the blood and kept it refrigerated until August 12, a Monday, at approximately 4:30 p.m.—or no later than 4:30 p.m. on Monday, that blood was transported to the lab at Greensburg.

Notes of Testimony (N.T.), 12/18/85, at 3. The parties further stipulated that the Greensburg laboratory had been closed on Sunday, August 11, 1985. *Id.* at 4.

Appellant argued in post-verdict motions, and argues here, that a blood alcohol test, as opposed to a breathalyzer test, is appropriate only when a defendant is transported to a hospital for the treatment of injuries. Since appellant did not sustain injuries, he asserts that upon the malfunction of the intoxilyzer at the Uniontown barracks, it was incumbent upon police to transport him to another state police barracks for the administration of a breathalyzer test, not to the hospital for a blood test. Second, appellant claims that since the blood sample was not transported to a laboratory within twenty-four hours, the test results were not admissible into evidence.

Appellant's arguments are premised upon 75 Pa.C.S. § 3755(a).

### § 3755. Reports by emergency room personnel

(a) General rule.—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual

physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory licensed and approved by the Department of Health and specifically designated for this purpose. This section shall be applicable to all injured occupants who were capable of motor vehicle operation if the operator or person in actual physical control of the movement of the motor vehicle cannot be determined. Test results shall be released upon request of the person tested, his attorney, his physician or governmental officials or agencies.

Thus, appellant contends, blood tests are authorized by the legislature only when a defendant is injured and requires treatment at a hospital.

The trial court determined that the conduct of police in obtaining a blood sample is governed by 75 Pa.C.S. § 1547(a), which states:

### § 1547. Chemical testing to determine amount of alcohol or controlled substance

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

We agree with the trial court that there is nothing in section 1547 to indicate the legislature intended to establish a preference among the means of testing. Nor is there any reference in either section 1547 or 3755(a) that blood testing may be used *only* if a driver suspected of intoxication requires emergency room treatment.

While it is true that section 1547(g) of the former Motor Vehicle Code, captioned "Blood test in lieu of breath test," supports the contention that a breath test was to be preferred to other testing, there is no such provision in the present Motor Vehicle Code, amended December 12, 1982.

We hold, based upon our reading of 75 Pa.C.S. § 1547, that police have the option of conducting whichever test is most expedient under the circumstances. *See McClintock v. Pa. Department of Transportation*, 36 Pa.D. & C.3d 38 (1984).

Appellant's alternative attack upon the admissibility of the blood alcohol test alleges that the police failed to transmit the blood sample to the Department of Health or an approved clinical laboratory within twenty-four hours, as required by 75 Pa.C.S. § 3755.

The trial court determined that the failure to abide by the twenty-four hour requirement of section 3755 goes only to the weight of the evidence, not its admissibility. The court relied upon *Commonwealth v. McGinnis*, 336 Pa.Super. 601, 486 A.2d 428 (1985), wherein a panel of this court held that a test resulting from the use of a breathalyzer device that had been modified prior to use and was not approved by the Department of Health, was still admissible in evidence, in light of the Commonwealth's evidence that the test was sufficiently reliable to permit the results to have probative value. Two weeks before the trial court filed its opinion denying post-trial motions in the present case, how-

ever, the Pennsylvania Supreme Court reversed the *McGinnis* decision. *Commonwealth v. McGinnis*, 511 Pa. 520, 515 A.2d 847 (1986). The supreme court determined that the use of a breathalyzer unit which had been modified and was not approved by the Department of Health was contrary to the requirement of 75 Pa.C.S. § 1547(c)(1) that chemical tests of breath "be performed on devices approved by the Department of Health...." The *McGinnis* court further held that the results were inadmissible as evidence of appellant's intoxication and should have been suppressed. The court also determined that the error was not harmless, as the remaining testimonial evidence of the appellant's intoxication was not sufficient to support a finding that he was driving under the influence of alcohol.

The supreme court's decision in *McGinnis* does not require suppression of the blood test results in the present case. The use of an unapproved breathalyzer unit is in violation of 75 Pa.C.S. § 1547(c), which is titled, "Test results admissible in evidence." Subsection (1) governs chemical tests of breath; subsection (c)(2), governing chemical tests of blood and urine, provides that the tests be "performed by a clinical laboratory licensed and approved by the Department of Health ... using procedures and equipment prescribed by the Department of Health." Appellant does not allege noncompliance with any aspect of this statute governing the admissibility into evidence of chemical tests to determine alcohol content. Rather, he alleges noncompliance with 75 Pa.C.S. § 3755, which is directed not to police, but to emergency room personnel. We believe this fact distinguishes this case from the holding of *McGinnis*.

■■ Instead, *Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643 (1980), is applicable. In that case a blood sample was drawn at 2:42 A.M. on January 1, 1977, and tested at an approved laboratory two days later, on January 3, 1977. A police officer testified that the sample was

refrigerated the entire time from when it was drawn until it was tested. The defendant in *Arizini* did not display the usual symptoms of an intoxicated person. Since the test results indicated that his blood contained .275% alcohol by weight, an argument was made that the test results were inaccurate. More specifically, Mr. Arizini claimed that the alcohol content of samples could have changed between the time the blood was drawn and the time it was tested.[1] The court in *Arizini* determined that the jury could have found, inter alia, that the alcohol content of the samples did not change significantly between the time the blood was drawn and the time it was tested. We conclude that the provisions of 75 Pa.C.S. § 3755 are directed to the conduct of emergency room personnel, and do not govern the admissibility of the results in evidence.

■ However, even if the admission of the blood tests was error, the error was harmless, as the remaining testimonial evidence of appellant's intoxication is sufficient to support a finding that Gary Brozik was driving under the influence of alcohol. *Commonwealth v. McGinnis, supra,* 511 Pa. 520, 515 A.2d 847 (1986). First, appellant testified that at 7:00 P.M. on the day of the accident, he had been drinking twelve ounce cans of beer for quite some time. N.T., 2/5/86, at 19–20. In addition, three experienced members of the state police and Uniontown police department testified that following his arrest, appellant's pants were wet and smelled of urine, he had the odor of alcohol on his breath, his eyes were glassy and bloodshot, and his speech was slurred. N.T., 2/4/86, at 23, 39; 2/5/86, at 97. Each officer opined that appellant was under the influence of alcohol. N.T., 2/4/86, at 25, 40; 2/5/86, at 97. It is clear that the testimonial evidence alone was sufficient to support the finding that appellant was driving under the influence of alcohol.

1. As section 3755(a) did not exist at the time the tests were performed on Mr. Arizini's blood, the specific issue alleged in the present case could not have been made.

We have studied the parties' briefs [2] and completely reviewed the entire record. We conclude that the able and thorough opinion of the Honorable William J. Franks properly addressed the remaining contentions of appellant. [3]

Judgment of sentence affirmed.

## APPENDIX

In The Court of Common Pleas of Fayette County, Pennsylvania

Criminal Division

No. 525 of 1985

OPINION AND ORDER

October 7, 1986

FRANKS, Judge:

The instant case is before us on defendant's Motion For A New Trial and In Arrest of Judgment. Defendant was charged with, and found guilty of, homicide by vehicle, homicide by vehicle while under the influence, notice of accident to the police department, no operator's license, safe speed, reckless driving, driving under the influence and

2. We note our disapproval of appellant's deviation from Pa.R.A.P. 2118. We expect compliance with the rule's requirement that the summary of argument "should *never* exceed two pages." (Emphasis added.)

3. The remaining questions presented by appellant for our review are: whether the trial court erred in 1) permitting the Commonwealth to introduce prior incidents of reckless driving on the day of the accident; 2) allowing the Commonwealth to cross examine appellant outside the scope of his direct testimony; 3) permitting the introduction of appellant's statements; 4) allowing a toxicologist to answer a hypothetical question; 5) failing to grant a mistrial based upon Dr. Tarwater's remarks; 6) failing to grant a mistrial based upon a juror's revelation that she knew appellant's sister; 7) allowing two Commonwealth witnesses to testify to the speed of appellant's vehicle; 8) whether the Commonwealth withheld exculpatory evidence; 9) whether the office of the public defender was incompetent to represent appellant; and whether trial counsel was ineffective in failing to 10) challenge the blood alcohol test based upon appellant's ingestion of his medication prior to the test; 11) have appellant psychologically and/or medically evaluated; and 12) present all evidence in appellant's favor.

accident involving death or injury. For the reasons stated below, we deny defendant's motion in its entirety.

## STATEMENT OF FACTS

The charges herein arose from the collision of a motor vehicle operated by defendant and the bicycle operated by the victim. The victim died several days later from the injuries received. The incident occurred at 8:20 p.m. on August 10, 1985. There were three eyewitnesses to the accident: the victim, who never regained consciousness, defendant, and his passenger-brother.

Defendant asserted at trial that he was traveling at ten to fifteen miles per hour in an alley of a residential neighborhood. While approaching an intersection at this speed, the victim made a sharp turn on his bicycle around a shed situated on the corner and ran into defendant. Defendant proceeded through the intersection. He then asserted that he stopped and began to leave his car. He decided to drive on when his brother indicated that the victim was not injured.

The Commonwealth's evidence consisted of the testimony of neighbors who saw a vehicle similar to the one operated by defendant traveling down the alley at a high rate of speed seconds before the crash. They further testified as to the position of the victim after the crash, and that defendant had not stopped to render assistance.

To supplement the testimony of the neighbors, the Commonwealth submitted the testimony of three Pennsylvania State Police Officers who had engaged in automobile chases with defendant at 4:00 p.m., 5:00 p.m., and 7:00 p.m. on the day of the instant collision. The officers identified defendant as the driver of the vehicle, testified that they viewed defendant drinking an alcoholic beverage, and further testified that he was driving in a reckless and unsafe manner.

Testimony was also given concerning defendant's arrest, and the administration of blood-alcohol level tests.

In addition to the officers, several physicians were called to testify. Two of the doctors testified to the injuries sustained by the victim and to his cause of death. Of those two doctors, one also testified to observing defendant at the hospital that evening and gave an opinion on defendant's state of intoxication at the time.

Dr. Charles Winek, a forensic pathologist and toxicologist, testified to the relationship between the consumption of alcohol and the ability to operate a vehicle. He further answered hypothetical questions on possible levels of blood-alcohol in a person under a given set of facts.

Testimony of several other technical people were introduced, who discussed the comparability of the car and bicycle paint, and the administration and testing of the blood sample taken from defendant.

During the second day of the trial, the Court was made aware of one of the juror's familiarity with defendant's sister. After questioning by the Court, the juror was excused and the first alternate was instructed to replace her. The case proceeded and the matter submitted to the jury. It returned verdicts of guilty on all counts.

Defendant now files his Motion For New Trial and In Arrest of Judgment. Because of the length of the motion, we shall deal with the assignments of error *seriatim*.

### 1. Evidence of police chases earlier on the day of the offense

Defendant concedes that the contact between defendant and the Pennsylvania State Police on the day of the offense is relevant to the case. However, defendant contends that the nature of the evidence was so prejudicial that its probative value was outweighed. We disagree.

Evidence of prior convictions or criminal acts is inadmissible except in certain circumstances including:

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes which are so related to

each other that proof of one tends to prove the others or (5) to establish the identity of the person charged with the commission of the crime on trial under circumstances where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the crime. *Commonwealth v. Slyman*, 334 Pa.Super. 415, 438, 483 A.2d 519 (1984).

Defendant is correct in his argument that even where evidence falls into one of the above classes its probative value must still outweigh its prejudicial effect. Thus, the admitting court must engage in a balancing test in which there are a number of considerations:

... the one side the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other the degree to which the jury will probably be raised by the evidence to overmastering hostility. *Commonwealth v. Shirey*, 333 Pa.Super. 85, 147, 481 A.2d 1314 (1984).

In the instant case the testimony of the officers was necessary to establish the identity of defendant. The witnesses to the collision could not identify defendant as the driver of the vehicle. Since the automobile did not belong the defendant, he could not be identified through a description of the vehicle. It was through the evidence presented by the state police that defendant was placed in the driver's seat of the car involved. Thus, the testimony was an integral and necessary portion of the Commonwealth's case.

It may be argued that defendant's statements admitting he was the driver were an equal source of identification evidence. We note that those statements had been, and still are, under attack by defendant. We do not believe that the Commonwealth must be compelled to rely on such evidence

where there is direct and substantial identification evidence available.

Nor do we find that the officers' testimony was unduly prejudicial to defendant. The nature of the actions described by the officers was not of a character or quality to "raise overmastering hostility" toward defendant. Thus, the officers' testimony was properly admitted.

### 2. Cross-examination of defendant outside the scope of direct

Defendant argues that the court impermissibly permitted defendant to be cross-examined outside the scope of his direct testimony. We disagree.

Defendant testified to his actions from approximately 7:00 p.m. on the evening of the incident. Defendant indicated that he was "scared" of meeting the State Police. The Commonwealth then cross-examined on the reasons underlying defendant's fright. At that point, defendant discussed the earlier chases.

> The scope of cross-examination extends beyond the subject testified to on direct examination and includes the right to examine any facts tending to refute "inferences and deductions" arising from matters testified to on direct. *Commonwealth v. Shirey, supra,* 333 Pa.Superior Ct. at 151, 481 A.2d at 1314.

Here defendant opened the floodgates through his testimony concerning his fear of the state police. It was only reasonable to request an explanation of why such a fear existed. Once defendant offered such a statement, the Commonwealth need not sit idly by and ignore it. *Commonwealth v. Trignani,* 334 Pa.Super. 526, 483 A.2d 862 (1984).

### 3. Defendant's inculpatory statements

Defendant made certain statements to the police while in custody. He now contends that such statements are inadmissible due to his inability to waive his rights and because counsel was not present. Defendant argues that he could

not have waived his *Miranda* rights at the hospital where his first statement was made. His assertion is drawn from an allegation made by defendant that the officers denied him medication which aided his ability to comprehend. Defendant argues without this medication he could not have intelligently waived his rights.

We dismiss this argument summarily because defendant later asserts in this motion that the results of the blood-alcohol level tests were unsubstantiated because *he had taken* his medication. Defendant cannot have it both ways. Based on his own inconsistent arguments, we must reject his argument.

Defendant also questions the admissibility of a statement made to State Police Trooper Robert Allan while incarcerated after the incident. The Honorable Conrad B. Capuzzi ruled in an omnibus pre-trial motion that defendant had been given his *Miranda* rights prior to Trooper Allan's questioning and that after answering several questions, defendant requested an attorney. All questioning ceased. We find no reason to suggest that Judge Capuzzi erred in deciding that this statement was admissible.

We further note that defendant testified to substantially the same matters at trial. Thus, we cannot find that any prejudice arose from the admissions made to Trooper Allan.

### 4. Hypothetical question to Dr. Winek

The Commonwealth posed a hypothetical question to Dr. Winek, the toxicologist, to attempt to establish the blood-alcohol level of a person similar to defendant on the date of the offense. Defendant objects to the question in that the Commonwealth did not know when defendant consumed his last drink. We do not believe the lack of knowledge of this fact is fatal to the Commonwealth's question.

The officer, who had custody of defendant from 8:35 p.m. until the blood-alcohol test, testified that defendant had nothing to drink or eat during this period. Dr. Winek could properly state his opinion of defendant's blood-alcohol level given those facts. The court in *Commonwealth v. Robert,*

94

496 Pa. 428, 437 A.2d 948 (1981) addressed the question raised by defendant.

Defendant concedes that all the facts stated in question were of record but complains that the question omitted certain other facts which allegedly could have influenced [the doctor's] opinion. It is settled, however, that if opposing counsel believes that relevant facts have been omitted, he is of course free on cross-examination to pose his own hypothetical questions which includes those facts. *Id.*, 496 Pa. at 434, 437 A.2d 948.

Thus, defendant was free to cross-examine Dr. Winek on other factors which may have altered his conclusion.

### 5. *Inflammatory remarks of Dr. Doyle Tarwater*

Commonwealth witness Dr. Doyle Tarwater was the emergency room physician who examined the victim. He also expressed an opinion on defendant's intoxication after viewing defendant, who was awaiting his blood test.

Dr. Tarwater related comments defendant had made at the time to the State Police and the emergency room nurses. Dr. Tarwater did not quote defendant but rather stated the comments were "obscene" and had "sexual connotations". Defendant objected and was sustained. The court immediately instructed the jury:

Members of the jury, the part of the doctor's answer where he referred to as making remarks to nurses having sexual connotation, that will be stricken and you will not consider that part of the answer. It is an improper answer and you will disregard that part of the answer entirely. (N.T. 2/4/86 at 91)

The court further instructed the doctor to limit his testimony to the question asked. We believe the above instructions to the jury and the doctor cured any harm which the doctor's statements may have caused. Further, not every improvident remark made by a witness will result in a mistrial. *Commonwealth v. Grant*, 479 Pa. 74, 387 A.2d 841 (1978). Thus, we find no basis for a mistrial in Dr. Tarwater's testimony.

### 6. Excusal of the juror

During the second day of trial, a member of the jury panel approached the court and disclosed that she knew defendant's sister. She further stated that she had had an argument with the sister concerning matters involving their children. The juror disavowed any knowledge of defendant personally. She further stated that the voir dire questions had not been fully understood.

Both defendant and the Commonwealth agreed to the replacement of this juror by the first alternate. (N.T. 2/4/86 at 48). Since no objections were stated at that time, the issue is now waived.

### 7. Introduction of defendant's blood-alcohol level test results

Defendant argues that the blood-alcohol level (hereinafter BAL) test results should not have been admitted at trial. The challenge to the BAL test encompass a number of areas.

The testimony reveals that the intoxilyzer upon which defendant was first tested was not properly functioning. Defendant was then transported to the hospital for the taking of a blood sample. Defendant contends that under 75 Pa.C.S.A. § 3755(a) the officers were required to transport him to another station where an intoxilyzer was in proper working order. He asserts the blood test is prohibited by Section 3755(a).

We agree with the Commonwealth that defendant's reliance on Section 3755(a) is misplaced. That section is clearly directed not at the police but at the emergency room personnel. Under 75 Pa.C.S.A. § 1547 blood, breath, and urine tests to discover BAL's are authorized. While breath tests are the most favored method by the courts, because they are the least intrusive, where circumstances dictate, blood tests are equally acceptable. *Commonwealth v. Funk*, 254 Pa.Super. 233, 385 A.2d 995 (1978).

Section 1547 has gone through a number of revisions. Subsection (g) in the 1976 version of the act authorized blood tests where defendant was unable to supply enough air for the intoxilyzer. This section has now been eliminated from the 1982 statute. We find it was the intent of the legislature not to prioritize the method of testing BAL's.

In the context of this case we find the officer's actions to be reasonable. They had made a good faith effort to test defendant with the breathalyzer and, that failing, took him to a nearby hospital for the test.

Defendant also asserts that the Commonwealth violated the act by failing to transmit the blood samples within twenty-four hours to a facility for testing. (The closest testing facility was closed for the weekend.) We disagree.

We must note that defendant has again relied upon Section 3755 in his argument. We find the applicability of that section dubious. In *Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643 (1980) similar retention of the samples was involved. While some testimony in *Arizini* indicated that improper storage would result in the BAL being changed somewhat, the court concluded that the jury could have believed that the change in alcohol level was insignificant.

It has recently been held that failure to abide by the act goes only to the weight and not to admissibility of the evidence:

> Moreover, the fact that the requirements of the statute (75 Pa.C.S.A. § 1547) were not met did not automatically render the test results inadmissible. In the usual setting it would mean only that the Commonwealth would be required to establish an alternate foundation by showing that the test actually administered was sufficiently reliable to permit the results to have probative value. *Commonwealth v. McGinnis*, 336 Pa.Super. 601, 608, 486 A.2d 428 (1985).

Here the officer testified to the packaging and storage of the sample. Further testimony indicated that the alcohol level would not have been seriously affected. Therefore,

we find the delay in bringing the blood sample to the laboratory was a matter for the jury to decide upon.

### 8. Testimony as to speed

Defendant argues that the court improperly permitted two Commonwealth witnesses to testify to the speed of defendant's vehicle in the alley. He asserts that the witnesses' characterization of his speed as "fast" is improper under the opinion evidence rule and highly prejudiced defendant.

The initial statement by the witness was the subject of objection by defendant. The objection was sustained and the jury instructed to disregard the remark. These instructions cured any harm which the initial statement may have had.

The subsequent statements did not elicit any objection from defendant. Therefore, any allegations of prejudices at this stage of the proceedings have been waived.

### 9. Breathalyzer test reading of .09

Defendant contends that he had knowledge that the results of a breathalyzer reading was .09. He asserts that the Commonwealth erred in not producing this evidence.

We perceive two difficulties with defendant's position. Initially, we note that the uncontroverted testimony of the State Police officers was that the intoxilyzer was malfunctioning. We fail to see how a reading from this defective machine could have been competent evidence.

More damaging is defendant's failure to inquire, while cross-examining the officers, about the results at trial. From his assertion it appears that defendant knew of the results at that time. A defendant cannot withhold evidence until after a verdict has been rendered and then attempt to impeach it if it is unfavorable.

### 10. Conflict of interest within the Public Defender's Office

Prior to trial defendant became aware that a member of the Public Defender's Office, other than trial counsel, may

have witnessed an automobile, similar to that which defendant drove, being operated in a reckless manner on the day of the accident.

Defendant now contends that the alleged viewing created a conflict of interest in the Public Defender's Office. As such, defendant believes that trial counsel should have withdrawn.

Defendant however raised no allegations of prejudice, nor at any time prior, or during, trial did he request a change of counsel. Further, defendant does not suggest that he requested counsel withdraw prior to trial. Defendant has therefore not presented a claim which is actionable.

### 11. Ineffective assistance of counsel

Defendant alleges that counsel was ineffective in three areas. After review of the record, we find no basis to so hold. In reviewing a claim of ineffectiveness:

> inquiry ceases and counsel's stewardship is deemed effective once we are able to conclude that the particular course chosen by counsel has some reasonable basis designed to effectuate his client's interest. *Commonwealth v. Slyman, supra,* 334 Pa.Super. at 434–435, 483 A.2d 519.

Initially defendant argues that counsel was ineffective for failing to challenge the BAL test because he had taken medication prior to the administration of the test. As noted earlier, defendant has inconsistently argued he had and did not have his medication. We believe any reasonable counsel would attempt to prevent his client from testifying in such an inconsistent manner. "The reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or actions." *Commonwealth v. Litzenburger,* 333 Pa.Super. 471, 480, 482 A.2d 968 (1984).

Defendant next asserts that counsel was ineffective for failing to order psychological and medical testing of defendant. Again we disagree. Contrary to defendant's argument that his "state of mind" was an essential element of

the case, we find that such evidence would have been irrelevant to the case. The types of charges facing defendant did not require an element of intent. Only defendant's level of intoxication was in question. Further medical testing would not have shown that defendant was incapable of driving the vehicle—a fact admitted by defendant at trial. "In any ineffectiveness case a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgment." *Id.* We fail to see that trial counsel's actions were unreasonable given the charges against defendant and his admissions.

Finally, defendant argues that counsel failed to present all evidence in his favor. To support this contention defendant points to the failure of counsel to call defendant's brother, Scott Brozik, as a witness. Scott had been a passenger in the car during the day's events. He had given the police a statement implicating defendant in the death and placing defendant in the driver's seat. Scott also stated other facts which were inconsistent with defendant's testimony. Counsel need not place a witness on the witness stand whose testimony would either impeach or be damaging to his client.

A finding that appellant is entitled to a new trial cannot be made unless it can be concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized resulting in prejudice to the defendant. *Commonwealth v. Evans,* 343 Pa.Super. 118, 132, 494 A.2d 383 (1985).

We can find with certainty that the addition of the testimony of Scott, defendant's brother, who had made incriminating statements, would not have substantially altered defendant's chances for success.

Defendant also argues that trial counsel erred by not taking photographs of the scene. Counsel instead utilized the numerous photographs submitted by the Commonwealth which depicted the scene. No allegation has been made that these photographs did not adequately depict the

intersection and alley. We are unconvinced that further photographic evidence would have benefitted defendant in any manner.

Other matters raised in defendant's motion have not been briefed and are considered waived.

## ORDER

AND NOW, this 7th day of October, 1986, it is ORDERED, ADJUDGED, and DIRECTED that defendant's Motion for a New Trial an In Arrest of Judgment is hereby denied. Defendant will present himself for sentencing on October 29, 1986, at 1:15 o'clock P.M. in Courtroom No. 2 of the Fayette County Courthouse.