J-S29021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES MONROE BALDWIN | |
| Appellant | No. 1240 WDA 2015 |

Appeal from the PCRA Order August 3, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0001671-2006

BEFORE:  BENDER, P.J.E., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.:                    **FILED JUNE 14, 2016**

Appellant, James Monroe Baldwin, appeals from the order that dismissed his petition pursuant to the Post Conviction Relief Act ("PCRA"). Baldwin argues that the PCRA court erred by failing to find that Baldwin's trial counsel had been ineffective. We conclude that Baldwin failed to establish his right to relief under the PCRA, and therefore affirm.

The Supreme Court of Pennsylvania, in addressing Baldwin's appeal from his judgment of sentence, provided the following factual and procedural summary of Baldwin's convictions.

> On January 25, 2006, [Baldwin] and his roommate, Brendan Martin, had an altercation when [Baldwin] served Martin with a notice to vacate the premises due to Martin's drug use. Martin

_____

[*] Former Justice specially assigned to the Superior Court.

attempted to hit [Baldwin] with a hammer, and [Baldwin] attacked Martin with a large knife, fatally stabbing him in the neck and heart. [Baldwin] dismembered the body, placed the parts in five plastic bags, and buried the remains in a shallow, makeshift grave. The next day, a road department employee discovered the grave and alerted police, who found the plastic bags containing the victim's remains, along with a backpack containing a piece of paper with [Baldwin's] name on it. Police interviewed [Baldwin], who admitted he attacked the victim and killed him.

[Baldwin] was charged with homicide and abuse of a corpse, and proceeded to a jury trial, at which he asserted an insanity defense.

***Commonwealth v. Baldwin***, 58 A.3d 754, 756 (Pa. 2012).

Baldwin's trial counsel conceded the basic facts of the case in his opening statement, and focused his case on the insanity defense.

[A] lot of what [the prosecutor] said in her opening statement is totally agreed with [regarding] the death of Mr. Martin.

…

We do know that Mr. Martin is dead. We do know how he died. We do know who killed him. Those are facts that I would stipulate to. Now, the question is, was James Baldwin insane at the time he committed these acts?

…

This is one of the most brutal, sadistic, terrible things that you could do to another human being. Chopping him up, and he said he wanted to chop him up to flush him down the commode. Is that sane? When you take a body, you take a body, if this was intelligently done, if he's an evil Professor Moriarity who, you know, who was smart enough to plan a murder and then to try to hide evidence and lie and do things. That's what they want you to think that he is. Or is he a product of this home school? Is he a product of being abused and tortured his whole life? Did he become insane, and were his symptoms – they didn't occur three

months after he was in jail. His symptoms were well before that. Well before that, and you'll hear that from the doctors.

…

What was done after this person and how he was killed and what was done to this poor boy afterwards is an example of one thing. Not a specific intent to kill. Not a brilliantly thought-out plan to hide evidence, not a criminal mastermind that tried [to] get away with murder. It's an example of total insanity. Total insanity. … An evil genius? Somebody that's trying to hide evidence from the police? Or a complete insane nut who didn't know, because of his illness, didn't know what he was doing.

He takes this body now, and when he burns his hands on the stomach acid, he decides, well, I'll just chop it up in bigger pieces, then what I'll do is an insane act. That alone you have to consider not as a criminal intelligence but as insanity.

N.T., Trial, 2/20-25/08, at 37-43.

The Commonwealth presented fact witnesses who testified to the circumstances of the crime and a recording of Baldwin's confession to investigators. Baldwin presented the testimony of a single witness, Laszlo Petras, M.D., a psychiatrist who treated Baldwin while he was involuntarily committed after his arrest. Dr. Petras opined that Baldwin was incapable of distinguishing right from wrong when he committed the homicide. In rebuttal, the Commonwealth called Bruce Wright, M.D., a forensic psychiatrist who interviewed Baldwin prior to trial and opined that Baldwin was not legally insane at the time he committed the homicide.

After deliberation, the jury returned a verdict of guilty on the charges of first degree murder and abuse of a corpse. The trial court sentenced Baldwin to life in prison without possibility of parole plus a consecutive term

of one to two years' imprisonment. The trial court subsequently denied Baldwin's post-sentence motions.

On appeal, this Court affirmed the judgment of sentence in a published decision. The Supreme Court of Pennsylvania granted Baldwin's petition for allowance of appeal, and affirmed this Court's decision in an opinion dated December 28, 2012.

Baldwin filed a timely *pro se* PCRA petition. Counsel was appointed to represent Baldwin, and counsel filed an amended PCRA petition. The PCRA court denied the amended petition on August 3, 2015, and Baldwin filed this timely appeal.

On appeal, Baldwin raises ten separate allegations of trial counsel ineffectiveness. "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, **Edmiston v. Pennsylvania**, 134 S. Ct. 639 (2013). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Koehler**, 36 A.3d 121, 131 (Pa. 2012) (citation omitted).

"[T]his Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011)

(citation omitted). In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). These issues must be neither previously litigated nor waived. *See* 42 Pa.C.S.A. § 9543(a)(3).

It is well settled that

[t]o plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1189-1190 (Pa. Super. 2012). "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Colavita*, 993 A.2d 874, 887 (Pa. 2010) (citation omitted). A failure to satisfy any prong of the test will require rejection of the claim. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014).

The right to an evidentiary hearing on a post-conviction petition is not absolute. *See Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa. Super. 2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. *See id*. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition

in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *See Commonwealth v. Hardcastle*, 701 A.2d 541, 542-543 (Pa. 1997).

In "ineffectiveness claims in particular, if the record reflects that the underlying issue is of no arguable merit or no prejudice resulted, no evidentiary hearing is required." *Commonwealth v. Bauhammers*, 92 A.3d 708, 726-727 (Pa. 2014) (citation omitted). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (citations and internal quotation marks omitted). We review a PCRA court's decision to deny a claim without a hearing for an abuse of discretion. *See id*.

Baldwin first argues that trial counsel was ineffective for making inflammatory and prejudicial statements about Baldwin and his family that had no relevant legal purpose.[1] Baldwin highlights counsel's allegations of

_____

[1] The Commonwealth urges us to affirm on the basis that Baldwin did not attach a witness certification regarding trial counsel to his petition. *See Commonwealth v. Brown*, 767 A.2d 576, 582 (Pa. Super. 2001) ("'where a petitioner requests an evidentiary hearing … the petition must include … a signed certification as to each intended witness…"). However, since the PCRA
*(Footnote Continued Next Page)*

- 6 -

child abuse at the hands of his father, counsel's characterization of the homicide as "brutal, sadistic, and terrible," and counsel's characterization of Martin as "this poor boy," despite Baldwin's statement that Martin had instigated the fight by attacking him with a claw hammer. Furthermore, Baldwin identifies instances where trial counsel likened him to fictional murderer Hannibal Lecter and infamous serial killer Jeffrey Dahmer.

While we agree that this was an unusual defense strategy, it is equally clear that this was an unusual case that included an undisputedly shocking treatment of the victim's body. The evidence linking Baldwin to the crime included Baldwin's recorded confession to the police, which painted a very complex collage of legal issues. Baldwin's confession indicated that the altercation between Baldwin and Martin was initiated by Martin attacking Baldwin with a claw hammer. During the fight, the two men fell to the floor, knocking over a nearby workbench. Baldwin grabbed a survival style knife from the floor and stabbed Martin.

While these facts could form the basis of a claim of self-defense, the remaining portions of Baldwin's recorded confession created significant obstacles. First, self-defense does not negate criminal liability for homicide where "the accused had a duty to retreat and the retreat was possible with

_(Footnote Continued)_ _____

court did not provide Baldwin with notice of this defect before dismissing his petition, we are precluded from affirming on this basis. **_See Commonwealth v. Pander_**, 100 A.3d 626, 642 (Pa. Super. 2014).

complete safety." ***Commonwealth v. McClendon***, 874 A.2d 1223, 1230 (Pa. Super. 2005) (citation omitted). Baldwin stated that after the initial stab, he stopped stabbing Martin because Martin was saying "stop, stop[.]" Furthermore, Baldwin admitted that he "tried to kill [Martin] because he just kept coughing and gurgling on it  by sticking him in the heart with the knife. … I tried to kill him because he was dying. I just wanted it to end." N.T., Trial, 2/20-25/08, at 190-191. Thus, Baldwin's recorded confession also established that 1) Baldwin had ended the altercation at the victim's insistence, 2) then resumed stabbing the victim, and 3) intended to kill the victim when he resumed stabbing him.

This evidence was followed by evidence, including both Baldwin's recorded confession and forensic evidence, that Baldwin then proceeded to dismember Martin's corpse and bury it on the side of a road. Furthermore, Baldwin admitted in his recorded confession that he cleaned up the crime scene.

Faced with this record, we cannot conclude that Baldwin has established that counsel's decision to pursue the defense of legal insanity to the detriment of a possible self-defense argument prejudiced Baldwin. Trial counsel's presentation of the defense of criminal insanity, while arguably inartful, was not prejudicial to Baldwin. Indeed, it appears to have been the least problematic option out of a range of bad options.

In a related argument, Baldwin contends that trial counsel was ineffective because his criminal insanity defense was "incomplete," and "poorly researched[.]" Baldwin succinctly identifies the legal boundaries of such a defense, and argues that trial counsel did not present the defense effectively.

In Pennsylvania, a defendant may be found not guilty due to legal insanity if he establishes, by the preponderance of the evidence, that while committing the criminal act, the defendant was suffering under such a defect of reason or disease of the mind, as not to know the nature of what he was doing, or that he did not know what he was doing was wrong. **See Commonwealth v. Roberts**, 437 A.2d 948, 951 (Pa. 1981); 18 Pa.C.S.A. § 315(a). While trial counsel's tactics may have been unusual, in that he compared his client to fictional and real life individuals who are universally reviled, we cannot conclude that he failed to present a legally sufficient case capable of supporting a not guilty verdict.

Trial counsel highlighted the highly illogical nature of Baldwin's actions on the night of the homicide. Furthermore, he presented the opinion of psychiatrist Laszlo Petras, M.D., who opined that Baldwin, at the time of the murder, was suffering from a "mental disease that would make it impossible for him to know what he did was wrong[.]" N.T., Trial, 2/20-25/08, at 272-273. If the jury had found Dr. Laszlo's testimony credible, it could have

returned a verdict of not guilty. Thus, Baldwin's second argument merits no relief.

In his third argument on appeal, Baldwin asserts that trial counsel was ineffective in failing to present a claim of self-defense. As discussed above, we are unable to conclude that such a defense would have been meritorious, given the statements contained in Baldwin's recorded confession. We therefore conclude that this argument merits no relief.

Next, Baldwin argues that trial counsel was ineffective in permitting the Commonwealth to perform an independent mental health examination without following the proper process set forth in the Rules of Criminal Procedure. Specifically, Baldwin notes that there is no indication in the record, written or transcribed, that Baldwin agreed to the examination. **See** Pa.R.Crim.P., Rule 569(A)(1)(b). Furthermore, he asserts that there is no indication in the record that the trial court ordered the examination, nor that the trial court provided the required colloquy if it did order the examination. **See** Pa.R.Crim.P., Rule 569(A)(2). The Commonwealth concedes that the record does not document compliance with Rule 569. **See** Appellee's Brief, at 35.

However, once again, Baldwin has failed to establish that he suffered prejudice from this action. He does not identify any testimony or other evidence that would have been impacted if Rule 569 had been complied with. While it is an open question whether this would qualify as a harmless

error on direct appeal, in a collateral action it is the petitioner's burden to establish prejudice. Since Baldwin has not met this burden, we conclude that this issue merits no relief.

Baldwin next argues that trial counsel was ineffective for failing to request to reopen the record when Baldwin indicated his desire to testify on his own behalf after the close of evidence. Baldwin's argument relies heavily upon the concurring opinion of Justice, now Chief Justice, Saylor, in addressing Baldwin's direct appeal. The concurrence noted that trial counsel did not explicitly request to reopen the record to allow Baldwin to testify. *See Baldwin*, 58 A.3d at 766-767. In contrast, the majority opinion concluded with the statement that it held that "there was no abuse of discretion in the trial court's denial of [Baldwin's] request to reopen the record to permit his testimony." *Id*., at 765-766. Therefore, it is clear that the majority addressed the issue on the merits and held that the trial court had properly refused a request to reopen. Thus, even assuming that trial counsel did not request to reopen the record, it is clear that it would not have impacted the ultimate outcome. This claim merits no relief.

In his next argument, Baldwin contends that trial counsel was ineffective for failing to object to the prosecutor's closing remarks where she described the homicide as an "execution," and argued that Baldwin's actions to conceal or destroy evidence of the homicide constituted evidence of both consciousness of guilt and evidence of malice.

We have previously recognized that

"[n]ot every unwise remark made by an attorney amounts to misconduct or warrants the grant of a new trial." **Commonwealth v. Carson**, 913 A.2d 220, 242 (Pa. 2006). "Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." **Commonwealth v. Stokes**, 839 A.2d 226, 230 (Pa. 2003), quoting **Commonwealth v. Fisher**, 813 A.2d 761, 768 (Pa. 2002).

Furthermore, according to the Pennsylvania Supreme Court in **Commonwealth v. Chmiel**[, 889 A.2d 501, 543-44 (Pa. 2005)]:

In determining whether the prosecutor engaged in misconduct, courts must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. A remark by a prosecutor, otherwise improper, may be appropriate if it is in [fair] response to the argument and comment of defense counsel. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

**Commonwealth v. Collins**, 70 A.3d 1245, 1252-53 (Pa. Super. 2013).

Pursuant to these standards, we conclude that neither of the statements identified by Baldwin were objectionable. As described above, Baldwin admitted, in his recorded confession, that he stabbed Martin because he wanted "it to end." The "it" in question being Martin's life. Thus, the prosecutor's use of "execution" was based upon evidence at trial, and did not form the basis for a valid objection. Baldwin failed to establish the arguable merit prong for this claim, and therefore no relief is due on appeal.

Turning to Baldwin's claim that trial counsel should have objected to the prosecutor's statement that Baldwin's attempt to conceal the crime after the fact constituted evidence of malice. Once again, Baldwin has failed to establish arguable merit to this claim, as "[a]ctions of the accused that occur before, during, and after [the crime] are admissible as evidence to show malice." **Commonwealth v. Gonzalez**, 858 A.2d 1219, 1223 (Pa. Super. 2004). The prosecutor's argument was therefore appropriate under the law, and therefore could not form the basis of a valid argument. No relief is due on this claim.

Baldwin next argues that trial counsel was ineffective by failing to request a continuance due to the fact that Baldwin had not been properly medicated while awaiting trial at the Allegheny County Jail. We note that other than a passing reference to an authority for establishing ineffective assistance of counsel, Baldwin fails to cite to any authority to establish the validity of this claim. **See** Pa.R.A.P. 2119(b). "When a party's brief fails to conform to the Rules of Appellate Procedure and the defects are substantial, this Court may, in its discretion, quash or dismiss the appeal pursuant to Rule 2101." **Giant Food Stores, LLC v. THF Silver Spring Development, L.P.**, 959 A.2d 438, 443 (Pa. Super. 2008) (citing Pa.R.A.P. 2101). Furthermore, "[w]hen issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review[,] a Court will not consider the merits thereof." **Branch Banking and Trust**

*v. Gesiorski*, 904 A.2d 939, 942-943 (Pa. Super. 2006). This Court does not take on the mantle of advocate and perform as appellant's counsel. *See Commonwealth v. Maris*, 629 A.2d 1014, 1017 (Pa. Super. 1993). Due to the substantial defects in this argument, we conclude that Baldwin has failed to preserve this issue for our review.

Next, Baldwin contends that trial counsel was ineffective in failing to move to suppress Baldwin's recorded confession. Baldwin argues that trial counsel should have moved to suppress the statement because he believes that he was in custody before he received his *Miranda*[2] warnings. Other than a citation to authority supporting the proposition that success in this claim requires a showing that there would have been merit in such a motion, Baldwin provides no authority for his argument. Furthermore, Baldwin concedes that his first inculpatory statements were not made until well after he received his *Miranda* warnings. *See* Appellant's Brief, at 52. We cannot discern from Baldwin's argument why he believes that his confession should have been suppressed. As such, we conclude that Baldwin's argument merits no relief on appeal.

In his ninth issue on appeal, Baldwin contends that trial counsel was ineffective in failing to call character witnesses to testify to his reputation for non-violence in the community. However, since we have already held that

_____

[2] *Miranda v. Arizona* , 384 U.S. 436 (1966).

trial counsel was not ineffective for conceding that Baldwin killed Martin and pursuing an insanity defense, Baldwin's character was not relevant. ***See Commonwealth v. Morley***, 681 A.2d 1254, 1260 (Pa. 1996). This claim therefore merits no relief.

In his final claim of ineffective assistance of counsel on appeal, Baldwin argues that trial counsel was ineffective for failing to further cross-examine a Commonwealth witness. Specifically, Baldwin faults trial counsel for failing to clarify the height differential between Baldwin and Martin, and to question the witness about Baldwin's post-arrest statements to police. Once again, Baldwin makes only a passing reference to the standards for ineffectiveness of counsel, but no citation to authority supporting the arguable merit of his claim. Nor has he managed to establish that these alleged failures prejudiced him. As such, we conclude that no relief is due.

Baldwin additionally argues that the ineffectiveness of trial counsel in this case "so undermined the truth-determining process such that there could not have been a reliable adjudication of guilt … in this case[.]" Appellant's Brief, at 56. This argument simply constitutes an attempt to re-cast Baldwin's ineffectiveness arguments from claims under the PCRA's section 9543(a)(2)(ii), into a claim under section 9543(a)(2)(i). As we have concluded that Baldwin has not established counsel's ineffectiveness, this claim also fails.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/14/2016